# Exhibit 1

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT TACOMA

| | |
|---|---|
| SEAN WILSON, individually and on behalf of all others similarly situated,<br><br>                    *Plaintiff,*<br><br>          *v.*<br><br>PTT, LLC., a Delaware limited liability company, d/b/a HIGH 5 GAMES, LLC, a Delaware limited liability company,<br><br>                    *Defendant.* | Case No.<br><br>**COMPLAINT—CLASS ACTION**<br><br>**JURY DEMAND** |

Plaintiff Sean Wilson brings this case, individually and on behalf of all others similarly situated, against Defendant PTT, LLC, d/b/a High 5 Games, LLC ("High 5 Games" or "Defendant") to enjoin its operation of illegal online casino games. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and upon information and belief, including investigation conducted by his attorneys, as to all other matters.

**<u>NATURE OF THE ACTION</u>**

1.      Defendant High 5 Games owns and operates a video game development company in the so-called "casual games" industry—that is, computer games designed to appeal to a mass audience of casual gamers. Defendant owns and operates a host of popular online slot machine

COMPLAINT—CLASS ACTION
Case No.

                    - 1 -

TOUSLEY BRAIN STEPHENS, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1    games including, *inter alia*, High 5 Casino and High 5 Vegas.

2        2.      Defendant's online slot machines are available to play on Android and Apple iOS

3    devices.

4        3.      Defendant provides a bundle of free "chips" to first-time visitors of its online

5    casino that can be used to wager on its games. After consumers inevitably lose their initial

6    allotment of chips, High 5 Games attempts to sell them additional chips starting at $4.99 for

7    192,000 chips. Without chips, consumers cannot play the gambling game.

8        4.      Freshly topped off with additional credits, consumers wager to win more credits.

9    The credits won by consumers playing Defendant's games of chance are identical to the chips

10   that Defendant sells. Thus, by wagering 192,000 chips that were purchased for $4.99, consumers

11   have the chance to win hundreds of thousands of additional chips that they would otherwise have

12   to purchase.

13       5.      By operating its online casino, Defendant has violated Washington law and

14   illegally profited from tens of thousands of consumers. Accordingly, Sean Wilson, on behalf of

15   himself and a Class of similarly situated individuals, brings this lawsuit to recover their losses, as

16   well as costs and attorneys' fees.

## PARTIES

18       6.      Plaintiff Sean Wilson is a natural person and a citizen of the state of Washington.

19       7.      Defendant PTT, LLC, d/b/a High 5 Games, LLC, is a limited liability company

20   organized and existing under the laws of Delaware, with its principal place of business at One

21   World Trade Center, Floors 58 and 59, New York, New York 10007. Defendant conducts

22   business throughout this District, Washington State, and the United States.

## JURISDICTION AND VENUE

24       8.      Federal subject-matter jurisdiction exists under 28 U.S.C. § 1332(d)(2) because

25   (a) at least one member of the class is a citizen of a state different from Defendant, (b) the

26   amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (c) none of the

27   exceptions under that subsection apply to this action.

COMPLAINT—CLASS ACTION
Case No.                                  - 2 -

9.    The Court has personal jurisdiction over Defendant because Defendant conducts significant business transactions in this District, and because the wrongful conduct occurred in and emanated from this District.

10.    Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

### I.    Free-to-Play and the New Era of Online Gambling

11.    The proliferation of internet-connected mobile devices has led to the growth of what are known in the industry as "free-to-play" videogames. The term is a misnomer. It refers to a model by which the initial download of the game is free, but companies reap huge profits by selling thousands of "in-game" items that start at $0.99 (purchases known as "micro-transactions" or "in-app purchases").

12.    The in-app purchase model has become particularly attractive to developers of games of chance (*e.g.*, poker, blackjack, and slot machine mobile videogames, amongst others), because it allows them to generate huge profits. In 2017, free-to-play games of chance generated over $3.8 billion in worldwide revenue, and they are expected to grow by ten percent annually.[1] Even "large land-based casino operators are looking at this new space" for "a healthy growth potential."[2]

13.    With games of chance that employ the in-game purchase strategy, developers have begun exploiting the same psychological triggers as casino operators. As one respected videogame publication put it:

> "If you hand someone a closed box full of promised goodies, many will happily pay you for the crowbar to crack it open. The tremendous power of small random packs of goodies has long been known to the creators of physical collectible card

---

[1]    GGRAsia – Social casino games 2017 revenue to rise 7pct plus says report, http://www.ggrasia.com/social-casino-games-2017-revenue-to-rise-7pct-plus-says-report/ (last visited Apr. 6, 18)

[2]    *Report confirms that social casino games have hit the jackpot with $1.6B in revenue | GamesBeat,* https://venturebeat.com/2012/09/11/report-confirms-that-social-casino-games-have-hit-the-jackpot-with-1-6b-in-revenue/ (last visited Apr. 6, 18)

COMPLAINT—CLASS ACTION
Case No.

- 3 -

TOUSLEY BRAIN STEPHENS, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600  •  Fax: 206.682.2992

Case 5:20-mc-80058-SVK   Document 1-1   Filed 03/06/20   Page 5 of 101
Case 3:18-cv-05275   Document 1   Filed 04/06/18   Page 4 of 17

games and companies that made football stickers a decade ago. For some … the allure of a closed box full of goodies is too powerful to resist. Whatever the worth of the randomised [sic] prizes inside, the offer of a free chest and the option to buy a key will make a small fortune out of these personalities. For those that like to gamble, these crates often offer a small chance of an ultra-rare item."[3]

14.     Another stated:

 "Games may influence 'feelings of pleasure and reward,' but this is an addiction to the games themselves; micro-transactions play to a different kind of addiction that has existed long before video games existed, more specifically, an addiction similar to that which you could develop in casinos and betting shops."[4]

15.     The comparison to casinos doesn't end there. Just as with casino operators, mobile game developers rely on a small portion of their players to provide the majority of their profits. These "whales," as they're known in casino parlance, account for just "0.15% of players" but provide "over 50% of mobile game revenue."[5]

16.     Game Informer, another respected videogame magazine, reported on the rise (and danger) of micro-transactions in mobile games and concluded:

"[M]any new mobile and social titles target small, susceptible populations for large percentages of their revenue. If ninety-five people all play a [free-to-play] game without spending money, but five people each pour $100 or more in to obtain virtual currency, the designer can break even. These five individuals are what the industry calls whales, and we tend not to be too concerned with how they're being used in the equation. While the scale and potential financial ruin is of a different magnitude, a similar profitability model governs casino gambling."[6]

17.     Academics have also studied the socioeconomic effect games that rely on in-app purchases have on consumers. In one study, the authors compiled several sources analyzing so-called free-to-play games of chance (called "casino" games below), and stated that:

"[Researchers] found that [free-to-play] casino gamers share many similar sociodemographic characteristics (e.g., employment, education, income) with online gamblers. Given these similarities, it is perhaps not surprising that a strong predictor of online gambling is engagement in [free-to-play] casino games. Putting a dark line under these findings, over half (58.3%) of disordered gamblers who were seeking treatment stated that social casino games were their first experiences

---

[3]     PC Gamer, *Microtransactions: the good, the bad and the ugly*,
http://www.pcgamer.com/microtransactions-the-good-the-bad-and-the-ugly/ (last visited Apr. 5, 2018).
[4]     The Badger, *Are micro-transactions ruining video games? | The Badger*,
http://thebadgeronline.com/2014/11/micro-transactions-ruining-video-games/ (last visited Apr. 5, 2018)..
[5]     *Id.* (emphasis added).
[6]     Game Informer, *How Microtransactions Are Bad For Gaming - Features - www.GameInformer.com*,
http://www.gameinformer.com/b/features/archive/2012/09/12/how-microtransactions-are-bad-for-gaming.aspx?CommentPosted=true&PageIndex=3 (last visited April 5, 2018)

COMPLAINT—CLASS ACTION
Case No.

- 4 -

TOUSLEY BRAIN STEPHENS, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1  with gambling."

2  …

3  "According to [another study], the purchase of virtual credits or virtual items
makes the activity of [free-to-play] casino gaming more similar to gambling.

4  Thus, micro-transactions may be a crucial predictor in the migration to online
gambling, as these players have now crossed a line by paying to engage in these

5  activities. Although, [sic] only 1–5% of [free-to-play] casino gamers make micro-
transactions, those who purchase virtual credits spend an average of $78. Despite

6  the limited numbers of social casino gamers purchasing virtual credits, revenues
from micro-transactions account for 60 % of all [free-to-play] casino gaming

7  revenue. Thus, a significant amount of revenue is based on players' desire to
purchase virtual credits above and beyond what is provided to the player in seed

8  credits."[7]

9      18.      The same authors looked at the link between playing free-to-play games of chance

10  and gambling in casinos. They stated that "prior research indicated that winning large sums of

11  virtual credits on social casino gaming sites was a key reason for [consumers'] migration to

12  online gambling," yet the largest predictor that a consumer will transition to online gambling was

13  "micro-transaction engagement." In fact, "the odds of migration to online gambling were

14  approximately *eight times greater* among people who made micro-transactions on [free-to-play]

15  casino games compared to [free-to-play] casino gamers who did not make micro-transactions."[8]

16      19.      The similarity between micro-transaction games of chance and games of chance

17  found in casinos has caused governments across the world to intervene to limit their availability.[9]

18  Unfortunately, such games have eluded regulation in the United States. As a result, and as

19  described below, Defendant High 5 Games has thrived, and thousands of consumers have spent

20  millions of dollars unwittingly playing Defendant's unlawful games of chance.

21

22  _____

[7]      Hyoun S. Kim, Michael J. A. Wohl, *et al.*, *Do Social Casino Gamers Migrate to Online Gambling? An*

23  *Assessment of Migration Rate and Potential Predictors*, Journal of gambling studies / co-sponsored by the National
Council on Problem Gambling and Institute for the Study of Gambling and Commercial Gaming (Nov. 14, 2014),

24  *available at* http://link.springer.com/content/pdf/10.1007%2Fs10899-014-9511-0.pdf (citations omitted).
[8]      *Id.* (emphasis added).

25  [9]      In late August 2014, South Korea began regulating "social gambling" games, including games similar to
Defendant's, by "ban[ning] all financial transactions directed" to the games. PokerNews.com, *Korea Shuts Down All*

26  *Facebook Games In Attempt To Regulate Social Gambling | PokerNews*,
https://www.pokernews.com/news/2014/09/korea-shuts-down-facebook-games-19204 htm (last visited Apr. 5,

27  2018). Similarly, "the Maltese Lotteries and Gambling Authority (LGA) invited the national Parliament to regulate
all digital games with prizes by the end of 2014." *Id.*

Tousley Brain Stephens, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

## II.    A Brief Introduction to High 5 Games

20.    Founded in 1985, High 5 Games has been a leading developer of land-based casino games, including video slot machines. High 5 Games gained popularity in 2008 with the release of its best performing slot machine in the company's history: Da Vinci Diamonds. High 5 Games continued to rise in prominence in the casino game industry with the release of the "mega hit" Golden Goddess and Black Widow video slot machine games.

21.    Indeed, High 5 Games expanded its casino game operation into the "casual game" industry by launching a multitude of online slot machine games on Apple's iOS, Android, and Facebook.

22.    Defendant has made large profits through its online gambling games. As explained further below, however, the revenue Defendant receives from the High 5 Casino online slot machine games are the result of operating unlawful games of chance camouflaged as innocuous videogames.

## III.    Defendant's Online Casino Contains Unlawful Games of Chance

23.    Consumers visiting Defendant's online casino for the first time are awarded free chips. These free sample chips offer a taste of gambling and are designed to encourage player to get hooked and buy more chips for real money.

24.    After they begin playing, consumers quickly lose their initial allotment of chips. Immediately thereafter, Defendant informs them via a "pop up" screen that their "credits are running low." *See* Figure 1.

*          *          *

COMPLAINT—CLASS ACTION
Case No.

- 6 -

Tousley Brain Stephens, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992



(**Figure 1**.)

25.     Concurrently with that warning, Defendant provides a link to consumers, allowing to purchase chips with real money at its electronic store. Defendant's chips range in price from $4.99 for 192,000 chips to $99.99 for 9,600,000 chips. *See* Figure 2. Once a player runs out of their allotment of free chips, they cannot continue to play the game without buying more chips for real money.



(**Figure 2**.)

26.     The decision to sell chips by the thousands isn't an accident. Rather, Defendant attempts to lower the perceived cost of the chips (costing just a fraction of a penny per chip) while simultaneously maximizing the value of the award (awarding millions of chips in jackpots), further inducing consumers to bet on its games.

27.     To begin wagering, players select the "BET" that will be used for a spin, as

1  illustrated in <u>Figure 3</u>. Defendant allows players to increase or decrease the amount he or she can

2  wager and ultimately win (or lose). Defendant allows players to multiply their bet by changing

3  the number of "lines" (*i.e.*, combinations) on which the consumer can win, shown in <u>Figure 3</u> as

4  the "LINE" button.



(**Figure 3.**)

13  28.  Once a consumer spins the slot machine by pressing the spinning circle button, no

14  action on his or her part is required. Indeed, none of High 5 Games' online casino games allow

15  (or call for) any additional user action. Instead, the consumer's computer or mobile device

16  communicates with and sends information (such as the "BET" amount) to Defendant's servers.

17  Defendant's servers then execute the game's algorithms that determine the spin's outcome.

18  Notably, none of Defendant's games depend on any amount of skill to determine their

19  outcomes—all outcomes are based entirely on chance.

20  29.  Consumers can continue playing with the chips that they won, or they can exit the

21  game and return at a later time to play because Defendant maintains win and loss records and

22  account balances for each consumer. Indeed, once Defendant's algorithms determine the

23  outcome of a spin and Defendant displays the outcome to the consumer, Defendant adjusts the

24  consumer's account balance. Defendant keeps records of each wager, outcome, win, and loss for

25  every player.

26

27

COMPLAINT—CLASS ACTION
Case No.

- 8 -

TOUSLEY BRAIN STEPHENS, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

**FACTS SPECIFIC TO PLAINTIFF WILSON**

30.     In or around December 2016, Plaintiff Wilson began playing High 5 Casino on his Apple iOS device. After Plaintiff lost the balance of his initial allocation of free chips, he purchased chips from the High 5 Games electronic store.

31.     Thereafter, Wilson continued playing various slot machines and other games of chance within Defendant's casino where he would wager chips for the chance of winning additional chips. Starting in December 2016, Plaintiff Wilson wagered and lost (and Defendant High 5 Games therefore won) $1.99 at Defendant's games of chance.

## CLASS ALLEGATIONS

32.     **Class Definition**: Plaintiff Wilson brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of himself and a Class of similarly situated individuals, defined as follows:

> All persons in the State of Washington who purchased and lost chips by wagering at Defendant's High 5 Games' online casino games.

The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

33.     **Numerosity**: On information and belief, tens of thousands of consumers fall into the definition of the Class. Members of the Class can be identified through Defendant's records, discovery, and other third-party sources.

34.     **Commonality and Predominance**: There are many questions of law and fact common to Plaintiff's and the Class's claims, and those questions predominate over any

TOUSLEY BRAIN STEPHENS, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1    questions that may affect individual members of the Class. Common questions for the Class

2    include, but are not necessarily limited to the following:

3             a.      Whether Defendant's online casino games are "gambling" as defined by

4                   RCW § 9.46.0237;

5             b.      Whether Defendant is the proprietor for whose benefit the online casino

6                   games are played;

7             c.      Whether Plaintiff and each member of the Class lost money or anything of

8                   value by gambling;

9             d.      Whether Defendant violated the Washington Consumer Protection Act,

10                  RCW § 19.86.010, *et seq*.; and

11             e.      Whether Defendant has been unjustly enriched as a result of its conduct.

12      35.     **Typicality**: Plaintiff's claims are typical of the claims of other members of the

13    Class in that Plaintiff's and the members of the Class sustained damages arising out of

14    Defendant's wrongful conduct.

15      36.     **Adequate Representation**: Plaintiff will fairly and adequately represent and

16    protect the interests of the Class and has retained counsel competent and experienced in complex

17    litigation and class actions. Plaintiff's claims are representative of the claims of the other

18    members of the Class, as Plaintiff and each member of the Class lost money playing Defendant's

19    games of chance. Plaintiff also has no interests antagonistic to those of the Class, and Defendant

20    has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously

21    prosecuting this action on behalf of the Class and have the financial resources to do so. Neither

22    Plaintiff nor his counsel have any interest adverse to the Class.

23      37.     **Policies Generally Applicable to the Class**: This class action is appropriate for

24    certification because Defendant has acted or refused to act on grounds generally applicable to the

25    Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible

26    standards of conduct toward the members of the Class and making final injunctive relief

27    appropriate with respect to the Class as a whole. Defendant's policies that Plaintiff challenges

COMPLAINT—CLASS ACTION
Case No.
- 10 -
TOUSLEY BRAIN STEPHENS, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1    apply and affect members of the Class uniformly, and Plaintiff's challenge of these policies

2    hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law

3    applicable only to Plaintiff. The factual and legal bases of Defendant's liability to Plaintiff and to

4    the other members of the Class are the same.

5         38.    **Superiority**: This case is also appropriate for certification because class

6    proceedings are superior to all other available methods for the fair and efficient adjudication of

7    this controversy. The harm suffered by the individual members of the Class is likely to have been

8    relatively small compared to the burden and expense of prosecuting individual actions to redress

9    Defendant's wrongful conduct. Absent a class action, it would be difficult if not impossible for

10    the individual members of the Class to obtain effective relief from Defendant. Even if members

11    of the Class themselves could sustain such individual litigation, it would not be preferable to a

12    class action because individual litigation would increase the delay and expense to all parties and

13    the Court and require duplicative consideration of the legal and factual issues presented. By

14    contrast, a class action presents far fewer management difficulties and provides the benefits of

15    single adjudication, economy of scale, and comprehensive supervision by a single Court.

16    Economies of time, effort, and expense will be fostered and uniformity of decisions will be

17    ensured.

18         39.    Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class

19    Definition" based on facts learned through additional investigation and in discovery.

20                    **FIRST CAUSE OF ACTION**
                  **Violations of Revised Code of Washington § 4.24.070**

21                     **(On behalf of Plaintiff and the Class)**

22         40.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

23         41.    Plaintiff, members of the Class, and Defendant are all "persons" as defined by

24    RCW § 9.46.0289.

25         42.    The state of Washington's "Recovery of money lost at gambling" statute, RCW §

26    4.24.070, provides that "all persons losing money or anything of value at or on any illegal

27    gambling games shall have a cause of action to recover from the dealer or player winning, or

TOUSLEY BRAIN STEPHENS, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1  from the proprietor for whose benefit such game was played or dealt, or such money or things of

2  value won, the amount of the money or the value of the thing so lost."

3      43.     "Gambling," defined by RCW § 9.46.0237, "means staking or risking something

4  of value upon the outcome of a contest of chance or a future contingent event not under the

5  person's control or influence."

6      44.     Defendant's "chips" or "credits" sold for use Defendant's online casino games are

7  "things of value" under RCW § 9.46.0285.

8      45.     Defendant High 5 Games' online casino games are illegal gambling games

9  because they are online games at which players wager things of value (the chips and by an

10  element of chance (*e.g.*, by spinning an online slot machine) are able to obtain additional

11  entertainment and extend gameplay (by winning additional chips.)

12      46.     Defendant High 5 Games is the proprietor for whose benefit the online gambling

13  games are played because it owns the High 5 casino games and operates those games for its own

14  profit.

15      47.     As such, Plaintiff and the Class gambled when they purchased chips to wager at

16  Defendant's online gambling game. Plaintiff and each member of the Class staked money, in the

17  form of chips purchased with money, at Defendant's games of chance (*e.g.*, Defendant's slot

18  machines and other games of chance) for the chance of winning additional things of value (*e.g.*,

19  chips that extend gameplay without additional charge).

20      48.     In addition, Defendant High 5 Games' online casino games are not "pinball

21  machine[s] or similar mechanical amusement device[s]" as contemplated by the statute because:

22          a.     the games are electronic rather than mechanical;

23          b.     the games confer replays but they are recorded and can be redeemed on

24          separate occasions (*i.e.*, they are not "immediate and unrecorded"); and

25          c.     the games contain electronic mechanisms that vary the chance of winning

26          free games or the number of free games which may be won (*e.g.*, the games allow

27          for different wager amounts).

COMPLAINT—CLASS ACTION
Case No.

- 12 -

TOUSLEY BRAIN STEPHENS, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

49.     RCW § 9.46.0285 states that a "'Thing of value,' as used in this chapter, means any money or property, any token, object or article exchangeable for money or property, or any form of credit or promise, directly or indirectly, contemplating transfer of money or property or of any interest therein, or involving extension of a service, entertainment or a privilege of playing at a game or scheme without charge."

50.     The "chips" Plaintiff and the Class had the chance of winning in Defendant High 5 Games' online casino games are "thing[s] of value" under Washington law because they are credits that involve the extension of entertainment and a privilege of playing a game without charge.

51.     Defendant High 5 Games' online casino games are "Contest[s] of chance," as defined by RCW § 9.46.0225, because they are "contest[s], game[s], gaming scheme[s], or gaming device[s] in which the outcome[s] depend[] in a material degree upon an element of chance, notwithstanding that skill of the contestants may also be a factor therein." Defendant's games are programmed to have outcomes that are determined entirely upon chance and a contestant's skill does not affect the outcomes.

52.     RCW § 9.46.0201 defines "Amusement game[s]" as games where "The outcome depends in a material degree upon the skill of the contestant," amongst other requirements. Defendant High 5 Games' online casino games are not "Amusement game[s]" because their outcomes are dependent entirely upon chance and not upon the skill of the player and because the games are "contest[s] of chance," as defined by RCW § 9.46.0225.

53.     As a direct and proximate result of Defendant's operation of its gambling game, Plaintiff Wilson and each member of the Class have lost money wagering at Defendant's games of chance. Plaintiff Wilson, on behalf of himself and the Class, seeks an order (1) requiring Defendant to cease the operation of its gambling game; and/or (2) awarding the recovery of all lost monies, interest, and reasonable attorneys' fees, expenses, and costs to the extent allowable.

COMPLAINT—CLASS ACTION
Case No.

- 13 -

### SECOND CAUSE OF ACTION
**Violations of the Washington Consumer Protection Act, § RCW 19.86.010, *et seq.***
**(On behalf of Plaintiff and the Class)**

54.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

55.     Washington's Consumer Protection Act, RCW § 19.86.010 *et seq.* ("CPA"), protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

56.     To achieve that goal, the CPA prohibits any person from using "unfair methods of competition or unfair or deceptive acts or practices in the conduct of any trade or commerce. . . ." RCW § 19.86.020.

57.     The CPA states that "a claimant may establish that the act or practice is injurious to the public interest because it . . . Violates a statute that contains a specific legislative declaration of public interest impact."

58.     Defendant violated RCW § 9.46.010, *et seq.* which declares that:

"The public policy of the state of Washington on gambling is to keep the criminal element out of gambling and to promote the social welfare of the people by limiting the nature and scope of gambling activities and by strict regulation and control.

It is hereby declared to be the policy of the legislature, recognizing the close relationship between professional gambling and organized crime, to restrain all persons from seeking profit from professional gambling activities in this state; to restrain all persons from patronizing such professional gambling activities; to safeguard the public against the evils induced by common gamblers and common gambling houses engaged in professional gambling; and at the same time, both to preserve the freedom of the press and to avoid restricting participation by individuals in activities and social pastimes, which activities and social pastimes are more for amusement rather than for profit, do not maliciously affect the public, and do not breach the peace."

59.     Defendant has violated RCW § 9.46.010, *et seq.*, because its online casino games are illegal online gambling games as described in ¶¶ 40-53 *supra*.

60.     Defendant's wrongful conduct occurred in the conduct of trade or commerce— *i.e.*, while Defendant was engaged in the operation of making computer games available to the public.

COMPLAINT—CLASS ACTION
Case No.

- 14 -

TOUSLEY BRAIN STEPHENS, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1    61.    Defendant's acts and practices were and are injurious to the public interest

2    because Defendant, in the course of its business, continuously advertised to and solicited the

3    general public in Washington State and throughout the United States to play its unlawful online

4    casino games of chance. This was part of a pattern or generalized course of conduct on the part

5    of Defendant, and many consumers have been adversely affected by Defendant's conduct and the

6    public is at risk.

7    62.    Defendant has profited immensely from its operation of unlawful games of

8    chance, amassing hundreds of millions of dollars from the losers of its games of chance.

9    63.    As a result of Defendant's conduct, Plaintiff and the Class members were injured

10   in their business or property—*i.e.*, economic injury—in that they lost money wagering on

11   Defendant's unlawful games of chance.

12   64.    Defendant's unfair or deceptive conduct proximately caused Plaintiff's and the

13   Class members' injury because, but for the challenged conduct, Plaintiff and the Class members

14   would not have lost money wagering at or on Defendant's games of chance, and they did so as a

15   direct, foreseeable, and planned consequence of that conduct.

16   65.    Plaintiff, on his own behalf and on behalf of the Class, seeks to enjoin further

17   violation and recover actual damages and treble damages, together with the costs of suit,

18   including reasonable attorneys' fees.

19                          **THIRD CAUSE OF ACTION**
                              **Unjust Enrichment**
20                      **(On behalf of Plaintiff and the Class)**

21   66.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth

22   herein.

23   67.    Plaintiff and the Class have conferred a benefit upon Defendant in the form of the

24   money Defendant received from them for the purchase of chips to wager at Defendant's High 5

25   Games' online casino games.

26

27

TOUSLEY BRAIN STEPHENS, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

68.   The purchase of the chips to wager at Defendant's online casino is and was beyond the scope of any contractual agreement between Defendant and Plaintiff and members of the Class.

69.   Defendant appreciates and/or has knowledge of the benefits conferred upon it by Plaintiff and the Class.

70.   Under principles of equity and good conscience, Defendant should not be permitted to retain the money obtained from Plaintiff and the members of the Class, which Defendant has unjustly obtained as a result of its unlawful operation of unlawful online gambling game. As it stands, Defendant has retained millions of dollars in profits generated from its unlawful games of chance and should not be permitted to retain those ill-gotten profits.

71.   Accordingly, Plaintiff and the Class seek full disgorgement and restitution of any money Defendant has retained as a result of the unlawful and/or wrongful conduct alleged herein.

## **PRAYER FOR RELIEF**

Plaintiff Sean Wilson, individually and on behalf of all others similarly situated, respectfully requests that this Court enter an Order:

a)   Certifying this case as a class action on behalf of the Class defined above, appointing Sean Wilson as representative of the Class, and appointing his counsel as class counsel;

b)   Declaring that Defendant's conduct, as set out above, violates the CPA;

c)   Entering judgment against Defendant, in the amount of the losses suffered by Plaintiff and each member of the Class;

d)   Enjoining Defendant from continuing the challenged conduct;

e)   Awarding damages to Plaintiff and the Class members in an amount to be determined at trial, including trebling as appropriate;

f)   Awarding restitution to Plaintiff and Class members in an amount to be determined at trial, and requiring disgorgement of all benefits that Defendant unjustly received;

COMPLAINT—CLASS ACTION
Case No.

- 16 -

g)      Awarding reasonable attorney's fees and expenses;

h)      Awarding pre- and post-judgment interest, to the extent allowable;

i)      Entering judgment for injunctive and/or declaratory relief as necessary to protect the interests of Plaintiff and the Class; and

j)      Awarding such other and further relief as equity and justice require.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated this 6th day of April, 2018.

Respectfully Submitted,

TOUSLEY BRAIN STEPHENS PLLC

By: */s/ Janissa A. Strabuk*
By: */s/ Cecily C. Shiel*
Janissa A. Strabuk, WSBA #21827
Email:  jstrabuk@tousley.com
Cecily C. Shiel, WSBA #50061
Email:  cshiel@tousley.com
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600/Fax: 206.682.2992

EDELSON PC
Benjamin H. Richman*
brichman@edelson.com
350 North LaSalle Street, Suite 1400
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Rafey Balabanian*
rbalabanian@edelson.com
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

*Pro hac vice* admission to be sought.

*Attorneys for Plaintiff and the Putative Class*

COMPLAINT—CLASS ACTION
Case No.

TOUSLEY BRAIN STEPHENS, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

# Exhibit 2

The Honorable Ronald B. Leighton

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF WASHINGTON**

**AT TACOMA**

| | |
|---|---|
| SEAN WILSON, individually and on behalf of all others similarly situated, | Case No. 3:18-CV-05275-RBL |
| *Plaintiff,* | |
| v. | **PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT HIGH 5 GAMES, LLC** |
| PTT, LLC., a Delaware limited liability company, d/b/a HIGH 5 GAMES, LLC, a Delaware limited liability company, | |
| *Defendant.* | |

Plaintiff Sean Wilson, pursuant to Rule 34 of the Federal Rules of Civil Procedure, requests that Defendant PTT, LLC d/b/a High 5 Games, LLC ("High 5") produce the following Documents for inspection and copying at the office of Edelson PC, 123 Townsend Street, Suite 100, San Francisco, California 94107, within thirty (30) days of service of this Request.

### I. Definitions

1.      "Addiction Phrases" means the following words and phrases as well as any other similar phrases used by You: addict*; continuous gaming activity; false win*; gambl*; hook*; hook; return to player; rtp; time on device; tod; pressur*; retain*; retention*; sticky; stickiness; and whale*.

2.      "High 5 Casino" means Your virtual casino entitled High 5 Casino.

3.      "Coin Package Pricing" means the price of coins, or coin packages, in the High 5 Casino in-game store.

4.      "Coin Package Offers" means offers for Guests to make Coin Purchases.

5.      "Coin Purchase" or "Coin Purchases" means a transaction in which a Guest purchases virtual coins in exchange for money, in the High 5 Casino in-game store.

6.      "Code-Based" means as a result of High 5 Casino computer code (*i.e.*, as opposed to as a result of human intervention by a VIP Manager).

7.      "Communication" or "Communications" means the transmittal of information, facts or ideas, Including Communications in the form of any discussion, conversation, inquiry, negotiation, agreement, understanding, meeting, telephone conversation, letter, correspondence, note, memorandum, e-mail message, instant message, text message, electronic chat, telegram, audio recordings, advertisement or other form of exchange of words, whether oral or written, or sent or received by You to or from any entity, Including files maintained or exchanged internally within Your business or with Your Employees. "Communication" or "Communications" also means all written and unwritten but recorded correspondence, Including non-duplicate drafts, versions not sent, and copies that differ only in margin notes or annotations, Including memos,

letters analog or digital recordings, audio recordings, electronic chat logs, voicemail, email, computer files, computer discs, or other things sent or received by You to or from any entity, Including files maintained or exchanged internally within Your business or with Your employees.

8.     "Compensation Structure" means all manner of employee compensation, Including bonuses and commission.

9.     "Complaint" means Plaintiff's Complaint filed in the United States District Court for the Western District of Washington on April, 6 2018 (Dkt. 1).

10.    "Date" means the exact year, month, and day, if known, or if not known, Your best approximation thereof.

11.    "Describe" when used in Relation To any process, policy, act, or event means explain the process, policy, act or event in complete and reasonable detail, stating the time, Date, and location, Identifying all Persons participating or present, and Identifying all Documents Relating thereto.

12.    "Developer" or "Developers" means any Person whose job is to create and design, or help create and design High 5 Casino Logic.

13.    "Disabled" means temporarily *or* permanently suspended, deleted, blocked, removed, canceled, or deactivated.

14.    "Document" or "Documents" means any writings, letters, telegrams, memoranda, correspondence, Communications, email messages, memoranda or notes of conferences or telephone conversations, reports, studies, lists, compilations of data, papers, books, records, contracts, deeds, leases, agreements, pictures, photographs, transcripts, tapes, microfilm, Computer data files, printouts, accounting statements, mechanical and electrical recordings, checks, pleadings, and other tangible things upon which any handwriting, typing, printing, drawing, representation, photostatic, or other magnetic or electrical impulses or other form of Communication is recorded, stored or produced, Including audio and video recordings, and ESI

(Including e-mails, web pages, websites, computer discs, computer programs and computer files, Including, where applicable, compiled and uncompiled source code), whether or not in printout form. These terms shall also mean copies of Documents even though the originals are not in Your possession, custody or control; every copy of a Document which contains handwritten or other notations or which otherwise does not duplicate the original of any other copy; all attachments to any Documents; and any other Documents, item and/or information discoverable under federal law and procedure, Including, without limitation, the items referenced in Federal Rule of Civil Procedure 34(a)(1).

15.    "Electronically Stored Information" or "ESI" as used herein, means and refers to computer generated information or data of any kind, stored on computers, file servers, discs, tape or other devices or Media, or otherwise evidenced by recording on some storage Media, whether real virtual, or cloud based.

16.    "Logic" means software code, software components, algorithms, or other means by which outcomes are decided by computation.

17.    "Free Coins" means High 5 Casino virtual game coins that are provided to a Guest at no charge, at any point after the Initial Coin Allotment.

18.    "Gambler" or "Gamblers" means a Guest who has made at least one Coin Purchase.

19.    "Guest" or "Guests" means any Person, identifiable through a unique UserId, who downloaded High 5 Casino and has any Time on Device.

20.    "Guest Profile" means any statistics, data, or information associated with a UserID that You collect or maintain.

21.    "Hit Frequency" means the frequency that a High 5 Casino slot machine stops at a winning combination.

22.    "Identify" or "Identifying," when used with respect to a natural Person, means to state the Person's full name, present or last known business affiliation and position, past and

present home address and past position and business affiliation, if any, with any of the parties herein.

23.     "Identify" or "Identifying," when used with respect to a company or other business entity, means to state the company's legal name, the names under which it does business, its form (e.g., partnership, corporation, etc.), the address of its principal place of business, and to Identify its principal proprietors, officers and/or directors.

24.     "Identify" or "Identifying," when used with respect to a Document, means to state the Date(s) prepared, drafted or generated, the author(s), intended and actual recipient(s), type of Document (e.g., "letter," "Terms of Service," "email," etc.), and to Identify its last known custodian or location.

25.     "Identify" or "Identifying," when used in reference to an event, transaction, or occurrence, means to Describe the act in complete and reasonable detail; state the time, Date, location; Identify all Persons participating or present; and Identify all Documents Relating thereto.

26.     "Including" means "including, but not limited to;" "Includes" means "includes, but is not limited to."

27.     "Initial Coin Allotment" means the virtual coins provided to a Guest when they play a High 5 Casino game for the first time.

28.     "Its Related Entities" means an entity's present and former divisions, present and former subsidiaries, present and former related companies, predecessors and successors, present and former officers, present and former directors, present and former agents, present and former attorneys, present and former employees, and all Persons acting, purporting to act, or that have purported to act on behalf of any of them.

29.     "Life" means the time period over which virtual coins are consumed.

30.     "Life Event Phrases" means following words and phrases as well as any other similar phrases used by You: pass* away; death, die; trauma, life event*, depress*, machine

1    zone, middle age*, divorc*; elder*, gambl*, and addict*.

2        31.     "Media" means or refers to an object or device, real or virtual, Including a disc,

3    tape, computer or other device, on which data is or was stored.

4        32.     "Metadata" means or refers to data about data, Including information embedded

5    in a native file or other data that is not ordinarily viewable or printable from the application that

6    generated, edited, or modified the native file, which describes the characteristics, origins, usage

7    and validity of the electronic file as well as information generated automatically by the operation

8    of a computer or other information technology system when a native file is created, modified,

9    transmitted, deleted or otherwise manipulated by a user of such system.

10       33.     "Person" means any natural person, corporation, partnership, association,

11   organization, joint ventures, or other entity of any type or nature.

12       34.     "Plaintiff" means Plaintiff Sean Wilson.

13       35.     "Platform" means the method by which a consumer interacted with High 5

14   Casino, Including: (1) Apple iOS app, (2) Google Android app, (3) Facebook, and (4) other

15   Platforms.

16       36.     "Purchase Information" means the date, time, dollar amount, payment method,

17   Platform, number of coins purchased, and UserId associated with a Coin Purchase.

18       37.     "Relating To," Including its various forms such as "Relates To" or "Related To,"

19   means to consist of, concern, discuss, mention, regard, refer to, reflect or be in any way logically,

20   factually or legally connected, directly or indirectly, with the matter described.

21       38.     "Relevant Time Period" means September 1, 2012 to the present day.

22       39.     "Research" means any studies, presentations, tests, memoranda, or reports.

23       40.     "Results" means the loss or win of virtual coins and, in the event of a win, the

24   amount of the win.

25       41.     "Return to Player" means the percentage of all wagered coins a High 5 Casino

26   slot machine pays back over time.

27

28

42. "Slot Machine Speed" means the virtual reel speed of a High 5 Casino slot machine game.

43. "Support" means to host, disseminate, or distribute for download or use.

44. "Tiers" means the VIP Tiers that are part of High 5 Casino's Club High Five loyalty program.

45. "Time on Device" means amount of time spent playing High 5 Casino slot machine games.

46. "UserId" means any unique identifier attached to a Person who has a High 5 Casino account and/or login.

47. "Versions" means all drafts, editions, iterations, forms, revisions, or variants of the Document or Communication described.

48. "VIP Guest" means any Gambler who receives monthly and/or bi-weekly email perks, sneak peeks to new products, or was assigned a VIP Manager.

49. "VIP Manager" means an employee who You designated as manager of one or more VIP Guests.

50. "VIP Tier" means Tier Level in Your Club High Five loyalty program.

51. "You" or "Your" means Defendant High 5 Games, LLC and its present and former divisions, present and former subsidiaries, present and former related companies, predecessors and successors, present and former officers, present and former directors, present and former agents, present and former attorneys, present and former employees, and all Persons acting, purporting to act, or that have purported to act on behalf of any of them.

## II. General Instructions

1. In the above Definitions, an asterisk (*) indicates a multicharacter wildcard.

2. All Documents must be produced in their native data format, along with all relevant Metadata. In the event You contend that Documents to be produced in response to any of the Requests are more readily available and easier to use, search, manage, and produce in a

non-native form, You shall promptly notify Plaintiff's counsel of the specific Documents at issue and the Parties shall meet and confer. If no agreement as to the format of the production for the Documents specified can be reached, the Parties shall submit their dispute to the Court.

3.      Each page of the produced Document or Media upon which ESI in native format is produced shall have a legible, unique page identifier, or "Bates Number."

4.      Where production of .tiff images rather than native format ESI is agreed upon by the Parties, each Document image file shall be named with the unique Bates Number of the first page of the Document, followed by the extension ".tiff." To the extent separate text files are provided, text files should be named the same as the first .tiff image of the Document.

5.      When producing the requested Documents, You are to designate for which specific Request(s) the Document is responsive, identifying them by Bates Number. Under Federal Rule of Civil Procedure 34(b)(2)(E), all Documents are to be produced in the form, order, and manner in which they are maintained in Your files. Documents are to be produced in the folders, cartons, or containers in which they have been maintained, stored, clipped, stapled, or otherwise arranged in the same form and manner in which they were found and in such manner that the office and location from which they were produced is readily identifiable. Whenever a Document or group of Documents is/are taken out of a file folder, file drawer, file box, or notebook, before the same is/are produced, attach thereto a copy of the label on the file folder, file box, or notebook from which the Document or group of Documents was removed.

6.      If any Document requested has been lost or destroyed since its creation, Identify the nature of the Document (e.g., letter, email, etc.), the Date of the Document, the Persons who sent and received the original and any copy of the Document, a summary of the content of the Document and Describe when, where, how, and by whom said Document was lost or destroyed, and state the name of the Person(s) who last had custody thereof.

7.      Unless otherwise specified, all Requests are limited to the scope of the Relevant Time Period.

### III. Requests for Production

**REQUEST FOR PRODUCTION NO. 1**

All Documents that You used, referenced, or relied upon in drafting Your answers to Plaintiff's First Set of Requests for Production of Documents.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 2**

All of Your Communications with Plaintiff.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 3**

All Documents Related To Plaintiff's Guest Profiles, Including Documents Sufficient to Identify Plaintiff's UserIDs.

**RESPONSE:**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**SPECIFIC INSTRUCTIONS FOR RFP NO. 4**

Plaintiff requests a meet and confer at a date and time of your convenience, but within fourteen (14) days of your receipt of these RFPs, to discuss the database format in which documents responsive to RFP No. 4 are regularly kept and most reasonably produced.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**REQUEST FOR PRODUCTION NO. 4**

Documents sufficient to Identify the Purchase Information associated with each Coin Purchase made during the Relevant Time Period.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 5**

Documents sufficient to Identify Your total annual revenue from High 5 Casino for each year calendar during the Relevant Time Period.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 6**

All Versions of the High 5 Casino Terms of Use during the Relevant Time Period.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 7**

All Research Related To how Time on Device affects Your revenue.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 8**

All Research Related To how the number of Gamblers affects Your revenue.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 9**

All contracts Related To High 5 Casino between You and third-party platform providers that Support High 5 Casino, Including Facebook, Apple, and Google.

**REQUEST FOR PRODUCTION NO. 10**

All Communications Related To High 5 Casino between You and third-party platform providers that Support High 5 Casino, Including Facebook, Apple, and Google.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 11**

Documents sufficient to Identify all third-parties that helped create, sold to You, or licensed to You any High 5 Casino Logic.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 12**

Documents sufficient to Identify all patents You hold Related To High 5 Casino.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 13**

All written Research that You conducted, or that a third party conducted for You, Related To High 5 Casino that includes any Addiction Phrases.

1  **RESPONSE:**

2  **REQUEST FOR PRODUCTION NO. 14**

3      Documents sufficient to Identify all Logic used to determine Coin Package Pricing, Slot

4  Machine Speed, or Hit Frequency.

5      **RESPONSE:**

6  **REQUEST FOR PRODUCTION NO. 15**

7      All Communications and all Documents that include any Life Event Phrases and were

8  sent, received, or authored by the following custodians: Steve Salmon; Patrick Benson; Nicholas

9  Chin; Gino Fratto; Denise Olivencia; Ting He; Deanna Ishikawa; Paura Pau; Samantha Wilson

10  Wood; Caitlin O'Malley; and Raynee Lester.

11      **RESPONSE:**

12  **REQUEST FOR PRODUCTION NO. 16**

13      Documents sufficient to Identify all of Your policies Related To when a Guest requests to

14  have their High 5 Casino account and/or credit card information Disabled.

15      **RESPONSE:**

16  **REQUEST FOR PRODUCTION NO. 17**

17      Documents sufficient to Identify all of Your policies Related To when a Guest uses an

18  Addiction Phrase or Life Event Phrase in a Communication with You.

19      **RESPONSE:**

20  **REQUEST FOR PRODUCTION NO. 18**

21      Documents sufficient to Identify the criteria for all Code-Based instances when Gamblers

22  receive Free Coins, Including the number of Free Coins received and any relationship between

23  that figure and the Gambler's recent Coin Purchases, VIP Tier, and/or recent in-game

24  performance.

25      **RESPONSE:**

26  **REQUEST FOR PRODUCTION NO. 19**

27

28

1    Documents sufficient to Identify the ratio, in each of calendar years: 2015, 2016, 2017,

2  and 2018, of (a) the number of Free Coins provided by You to (b) the number of virtual coins

3  acquired through Coin Purchases, broken down by each VIP Tier.

4    **RESPONSE:**

5  **REQUEST FOR PRODUCTION NO. 20**

6    Documents sufficient to Identify the average Life of the amount of coins equal to the

7  average Initial Coin Allotment during each of the following calendar years: 2015; 2016; 2017;

8  and 2018.

9  **REQUEST FOR PRODUCTION NO. 21**

10    All Research conducted by You or third parties Related To Initial Coin Allotment.

11    **RESPONSE:**

12  **REQUEST FOR PRODUCTION NO. 22**

13    Documents sufficient to Identify the percentage of Your Guests who have ever made a

14  Coin Purchase.

15    **RESPONSE:**

16  **REQUEST FOR PRODUCTION NO. 23**

17    Documents sufficient to Identify the percentage of Your Guests who (1) have a total

18  Time on Device in excess of 2 hours, but (2) have never made a Coin Purchase.

19    **RESPONSE:**

20  **REQUEST FOR PRODUCTION NO. 24**

21    All handbooks, presentations, training materials, policies, and other employment-related

22  materials You have ever provided to VIP Managers.

23    **RESPONSE:**

24  **REQUEST FOR PRODUCTION NO. 25**

25    Documents sufficient to Identify the Compensation Structure for VIP Managers.

26    **RESPONSE:**

27

28

**REQUEST FOR PRODUCTION NO. 26**

Documents sufficient to Identify all employees that VIP Managers directly reported to.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 27**

Documents sufficient to Identify the average amount of money Gamblers have spent on Coin Purchases when they reach each VIP Tier.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 28**

All Communications sent to or from a VIP Manager that contain any Addiction Phrases.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 29**

All Logic Related To Coin Package Offers, Including all Logic that explains when Coin Package Offers are made and all Logic that explains the dollar value associated with Coin Package Offers.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 30**

All Logic Related to whether the Results of Your slot machine games depend in any way on the Guest's Coin Purchases, Time on Device, Continuous Gaming Activity, or any other non-random factors.

**Response:**

**REQUEST FOR PRODUCTION NO. 31**

All Communications between or among You and the Washington State Gambling Commission and Its Related Entities Relating To High 5 Casino.

**Response:**

\*                    \*                    \*

1

2

**SEAN WILSON:** individually and on behalf of all others similarly situated,

3   Dated: January 16, 2019

4

By: /s/ Todd Logan
One of Plaintiffs' Attorneys

5

6

7

8

9

10

11

Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
Todd Logan (SBN 305912)
tlogan@edelson.com
Brandt Silver-Korn (SBN 323530)*
bsilverkorn@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9495

12

*Pro Hac Vice* admission to be sought

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 3



**HOLLAND & HART.** LLP

**Jennifer M. Jensen**
**Associate**
**Phone** 208.383.3974
jmjensen@hollandhart.com

January 13, 2020

**VIA EMAIL**

Todd Logan
Brandt Silver-Korn
Edelson PC
123 Townsend St, Ste 100
San Francisco, CA 94107
tlogan@edelson.com
bsilverkorn@edelson.com

  **Re: Wilson v. PTT, LLC, No. 3:18-cv-05275 (W.D. Wash.)**

Dear Todd:

   I write in response to your December 13, 2019 letter, our meet and confer call on January 9, 2020.

   **RFP 15:** This request asks for "All Communications and all Documents that include any Life Event Phrases" that were "sent, received, or authored" by eleven listed custodians. High 5 does not accept Plaintiff's proposal set forth in the December 13, 2019 letter, which does not cure the inappropriateness of the request. High 5 disagrees with your statements and characterizations of the data produced. Additionally and more importantly, the production of purchase data does not alter the fact that Sean Wilson, the putative class representative in the case, has not alleged addiction as part of his claims. He is not entitled to discovery fishing for information about absent members of a putative class based on a theory that conflicts with his own claims. His deposition testimony has only served to confirm that RFP 15 is inappropriate. As Plaintiff testified in his deposition, he felt he was engrossed in a video game for nine minutes of game play and spent $1.99.

   **RFP 33:** This RFP seeks "For each Gambler identified in RFP No. 32, Documents sufficient to Identify all available Contact Information." High 5 does not accept Plaintiff's proposal set forth in the December 13, 2019 letter for the same reasons outlined in High 5's response to Plaintiff's Second LCR 37 Submission. High 5 disagrees with Plaintiff's characterization that "High 5 continues to question the reliability of its IP address information[.]" As we have discussed more than once before, High 5 has a continuing objection to the reliability of IP addresses as an indicator of location and has experienced a bug that has caused the return of internal IP addresses for some transactions. Additionally, High 5 disagrees with Plaintiff's characterization of the document production.

T 208.342.5000 F 208.343.8869
800 W. Main Street, Suite 1750, Boise, ID 83702-5974
P.O. Box 2527, Boise, ID 83701-2527
www.hollandhart.com

| Alaska | Montana | Utah |
| Colorado | Nevada | Washington, D.C. |
| Idaho | New Mexico | Wyoming |



Todd Logan
January 13, 2020
Page 2

**RFP 34:** This request seeks "All iterations of High 5 Casino source code from each of the following years: 2012, 2013, 2014, 2015, 2016, 2017, and 2018." High 5 maintains its objections to the production or inspection of its source code. In the December 13, 2019 letter, Plaintiff proposed a declaration instead of production or inspection of source code. In response to this request, High 5 is willing to produce a sworn affidavit (or declaration) stating the following:

- As used herein, the term "High 5 Casino" refers to the social gaming app created and maintained by High 5 Games, LLC since 2012.
- The outcome of spins in High 5 Casino are not under a player's control or influence except that the player may choose which game or games to play, when to press the "spin" button, and how many virtual coins to play.
- The outcome of the spins of High 5 Casino are always completely randomized.
- The above has been true of all versions of High 5 Casino source code from the period April 7, 2014 through the present.
- High 5 will not argue, at class certification, that historical changes to High 5 Casino source code (and consequently High 5 Casino functionality) undermine certification.

Please advise whether this proposed declaration language is acceptable.

**RFP 37:** This RFP asks for documents sufficient to identify the average Life of purchased virtual coins, at each time interval High 5 tracked, during each calendar year 2012-2018.

High 5 maintains its objections and arguments. In the interest of efficiency as the parties move forward in discovery, however, High 5 is willing to provide a sworn affidavit or declaration stating:

- As used herein, the term "High 5 Casino" refers to the social gaming app created and maintained by High 5 Games, LLC since 2012.
- High 5 does not trace the wins or losses of purchased virtual coins. High 5 has information on each user's virtual coin balance throughout High 5 Casino game play. This virtual coin balance does not distinguish between free and purchased virtual coins.
- High 5 has some information showing purchases of virtual coins, including the number of virtual coins and the date by which the same number of virtual coins were spun. This information does not reflect whether the user won or lost the virtual coins—just whether the same number of virtual coins had been spun. This information also does not reflect whether the purchased virtual coins were

 **HOLLAND&HART.**

Todd Logan
January 13, 2020
Page 3

actually spun (versus free coins the user had).

Please advise whether this proposed declaration language is acceptable.

**RFPs 39 and 40:**  These RFPs seek documents sufficient to identify accounting practices for virtual coins purchased and documents sufficient to identify any changes to such accounting practices.  High 5 maintains its objections and arguments as set forth in its discovery responses, prior meet and confer letters, and High 5's response to the Second LCR 37 Motion.  High 5 is aware Plaintiff is not seeking "all information about High 5's finances."  High 5 stated in its response to the Second LCR 37 Motion, "To state the obvious, not all information about High 5's finances relates to Plaintiff's asserted damages."  Accordingly, Plaintiff cannot simply assert "damages" as a basis to compel financial information; he must demonstrate some level of relevance of the information he seeks, which he has failed to do.  Further, even if there were some relevance, the requests are far overbroad and burdensome.  While RFPs seek documents "sufficient to identify," in reality, the documents "sufficient to identify" would include financial reports relating to much more than issues touching on virtual coins.

During our meet and confer call on January 9, 2020, you offered a compromise.  You stated that Plaintiff would be willing to accept a single document showing when High 5 recognizes revenue with respect to virtual coin purchases, with the representation that the document is representative of the relevant time period.  With the production of that document, Plaintiff would consider High 5's production with respect to RFPs 39 and 40 to be complete and would pursue no further documents responsive to RFPs 39 and 40.

High 5 would need to conduct further inquiry to determine whether such a proposal is acceptable and is unable to accept or decline this offer.  If, however, your offer is only open until close of business today, then High 5 must decline because it cannot accept without conducting further inquiry.  Please let me know if you will wait for High 5 to determine its position on this proposal or whether you are considering the offer declined.

**High 5 Vegas.**  High 5 offers a number of products and services.  High 5 Vegas is different than High 5 Casino, as you are aware.  High 5 Vegas is irrelevant to Plaintiff's claims.  Plaintiff does not allege any claims arising from High 5 Vegas and confirmed in his deposition that he did not play High 5 Vegas.  Further, High 5 Vegas is outside the scope of the RFPs Plaintiff served.  High 5 will not produce information related to High 5 Vegas in response to Plaintiff's RFPs.



HOLLAND&HART.

**Stipulated motion.** As discussed, we will provide a draft stipulated motion to replace the document reflecting Plaintiff's email address as soon as we have a chance.

Best Regards,

Jennifer M. Jensen
Associate
for Holland & Hart LLP

JMJ:slg

13966871_v3

# Exhibit 4

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Western District of Washington

| | | |
|---|---|---|
| Sean Wilson | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  18-cv-05275-RBL |
| PTT, LLC, d/b/a High 5 Games, LLC | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:          Google LLC c/o Corporation Service Company
2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Rider

| Place: Edelson PC | Date and Time: |
|---|---|
| 123 Townsend Street, Suite 100 San Francisco, CA 94107 | 01/31/2020 11:59 pm |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      01/13/2020

|  |  |  |
|---|---|---|
| *CLERK OF COURT* | OR | |
| Signature of Clerk or Deputy Clerk | | Attorney's signature |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*      Sean Wilson
, who issues or requests this subpoena, are:

Todd Logan, 123 Townsend Street, Suite 100, San Francisco, CA 94107, tlogan@edelson.com, 415-638-9660

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 18-cv-05275-RBL

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
Server's signature

_____
Printed name and title

_____
Server's address

Additional information regarding attempted service, etc.:

Print    Save As    Add Attachment    Reset

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) For Other Discovery.** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

The Honorable Ronald B. Leighton

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## TACOMA DIVISION

| | |
|---|---|
| SEAN WILSON, individually and on behalf of all others similarly situated, | Case No. 18-cv-05275-RBL |
| *Plaintiff*, | |
| v. | **RIDER TO SUBPOENA TO GOOGLE LLC.** |
| PTT, LLC, a Delaware limited liability company, d/b/a HIGH 5 GAMES, LLC, a Delaware limited liability company, | |
| *Defendant*. | |

1

*I. Definitions*

2       1.      "Communication" or "Communications" means the transmittal of information,

3   facts or ideas, Including Communications in the form of any discussion, conversation, inquiry,

4   negotiation, agreement, understanding, meeting, telephone conversation, letter, correspondence,

5   note, memorandum, e-mail message, e-mail attachment, instant message, text message,

6   electronic chat, telegram, audio recordings, advertisement or other form of exchange of words,

7   whether oral or written, or sent or received by You to or from any entity, Including files

8   maintained or exchanged internally within Your business or with Your employees.

9   "Communication" or "Communications" also means all written and unwritten but recorded

10  correspondence, Including non-duplicate drafts, Versions not sent, and copies that differ only in

11  margin notes or annotations, Including memos, letters analog or digital recordings, audio

12  recordings, electronic chat logs, voicemail, email, computer files, computer discs, or other things

13  sent or received by You to or from any entity, Including files maintained or exchanged internally

14  within Your business or with Your employees.

15      2.      "Date" means the exact year, month, and day, if known, or if not known, Your

16  best approximation thereof.

17      3.      "Document" or "Documents" means any writings, letters, telegrams, memoranda,

18  correspondence, Communications, email messages, memoranda or notes of conferences or

19  telephone conversations, reports, studies, lists, compilations of data, papers, books, records,

20  contracts, deeds, leases, agreements, pictures, photographs, transcripts, tapes, microfilm,

21  Computer data files, printouts, accounting statements, mechanical and electrical recordings,

22  checks, pleadings, and other tangible things upon which any handwriting, typing, printing,

23  drawing, representation, photostatic, or other magnetic or electrical impulses or other form of

24  Communication is recorded, stored or produced, Including audio and video recordings, and ESI

25  (Including e-mails, web pages, websites, computer discs, computer programs and computer files,

26  Including, where applicable, compiled and uncompiled source code), whether or not in printout

27

28

form. These terms shall also mean copies of Documents even though the originals are not in Your possession, custody or control; every copy of a Document which contains handwritten or other notations or which otherwise does not duplicate the original of any other copy; all attachments to any Documents; and any other Documents, item and/or information discoverable under federal law and procedure, Including, without limitation, the items referenced in Federal Rule of Civil Procedure 34(a)(1).

4.      "Electronically Stored Information" or "ESI" as used herein, means and refers to computer generated information or data of any kind, stored on computers, file servers, discs, tape or other devices or Media, or otherwise evidenced by recording on some storage Media, whether real virtual, or cloud based.

5.      "Including" means "including, but not limited to;" "Includes" means "includes, but is not limited to."

6.      "Media" means or refers to an object or device, real or virtual, Including a disc, tape, computer or other device, on which data is or was stored.

7.      "Metadata" means or refers to data about data, Including information embedded in a native file or other data that is not ordinarily viewable or printable from the application that generated, edited, or modified the native file, which describes the characteristics, origins, usage and validity of the electronic file as well as information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

8.      "Person" means any natural person, corporation, partnership, association, organization, joint ventures, or other entity of any type or nature.

9.      "Plaintiff" means Plaintiff Sean Wilson.

10.     "Purchase Information" means the Date, time, dollar amount, number of Virtual Chips purchased, and UserId associated with a Virtual Chip Transaction.

11.     "Related Entities" means an entity's predecessors and successors, present and

former agents, present and former attorneys, present and former directors, present and former divisions, present and former employees, present and former officers, present and former related companies, present and former subsidiaries, and all Persons acting, purporting to act, or that have purported to act on behalf of any of them.

12.     "UserId" means a unique identifier attached to a Person who has a High 5 Casino, High 5 Vegas, and/or Google Play Store account.

13.     "Virtual Chips" means the virtual currency users may purchase in casino apps, regardless of the denominated name for that virtual currency within the app (*e.g.*, "Chips," "Coins," "Tokens," "Credits," etc.).

14.      "Virtual Chip Transaction" means a transaction in which a casino app user exchanges money for Virtual Chips.

15.     "You" or "Your" means Google LLC and its Related Entities.

### *II.  General Instructions*

1.     All Documents must be produced in their native data format, along with all relevant Metadata. In the event You contend that Documents to be produced in response to any of the Requests are more readily available and easier to use, search, manage, and produce in a non-native form, You shall promptly notify Plaintiff's counsel of the specific Documents at issue and the Parties shall meet and confer. If no agreement as to the format of the production for the Documents specified can be reached, the Parties shall submit their dispute to the Court.

2.     Each page of the produced Document or Media upon which ESI in native format is produced shall have a legible, unique page identifier, or "Bates Number."

3.     Where production of .tiff images rather than native format ESI is agreed upon by the Parties, each Document image file shall be named with the unique Bates Number of the first page of the Document, followed by the extension ".tiff." To the extent separate text files are provided, text files should be named the same as the first .tiff image of the Document.

4.     When producing the requested Documents, You are to designate for which

1  specific Request(s) the Document is responsive, identifying them by Bates Number. Under

2  Federal Rule of Civil Procedure 45(e)(1), all Documents are to be produced in the form, order,

3  and manner in which they are maintained in Your files. Documents are to be produced in the

4  folders, cartons, or containers in which they have been maintained, stored, clipped, stapled, or

5  otherwise arranged in the same form and manner in which they were found and in such manner

6  that the office and location from which they were produced is readily identifiable. Whenever a

7  Document or group of Documents is/are taken out of a file folder, file drawer, file box, or

8  notebook, before the same is/are produced, attach thereto a copy of the label on the file folder,

9  file box, or notebook from which the Document or group of Documents was removed.

10         5.      If any Document requested has been lost or destroyed since its creation, identify

11  the nature of the Document (e.g., letter, email, etc.), the Date of the Document, the Persons who

12  sent and received the original and any copy of the Document, a summary of the content of the

13  Document and Describe when, where, how, and by whom said Document was lost or destroyed,

14  and state the name of the Person(s) who last had custody thereof.

15         6.      All definitions should be interpreted to include the defined terms in both their

16  singular and plural forms.

### *III.  Requests for Production*

**REQUEST FOR PRODUCTION NO. 1**

Documents sufficient to identify all Virtual Chip Transactions in each of the following

casino apps offered on the Google Play Store: High 5 Casino and High 5 Vegas.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 2**

Documents sufficient to identify the Purchase Information for all Virtual Chip

Transactions responsive to Request for Production No. 1.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 3**

1    For the time period April 1, 2014 to present, Documents sufficient to identify Plaintiff's

2   app download, app subscription, app purchase, and in-app purchase history for apps that You

3   categorize as "Games."

4    **RESPONSE:**

5   **REQUEST FOR PRODUCTION NO. 4**

6    For the time period April 1, 2014 to present, Documents sufficient to identify the total

7   number of apps, broken down by app category (defined by You at:

8   https://support.google.com/googleplay/android-developer/answer/113475?hl=en), that were

9   downloaded by Plaintiff and are not categorized as "Games."

10    **RESPONSE:**

11   **REQUEST FOR PRODUCTION NO. 5**

12    For apps responsive to Request for Production No. 4, Documents sufficient to

13   identify (i) the date range of Plaintiff's app downloads (ii) the total number of Plaintiff's in-app

14   purchases, (iii) the date range of Plaintiff's in-app purchases, and (iv) the total amount of money

15   Plaintiff has spent on in-app purchases, each broken down by app category (defined by You at:

16   https://support.google.com/googleplay/android-developer/answer/113475?hl=en).

17    **RESPONSE:**

18                    *                    *                    *

19

20                    **SEAN WILSON,** individually and on behalf of all
                       others similarly situated,

21

22   Dated: January 13, 2020          By:    /s/ Todd Logan
                                        One of Plaintiff's Attorneys

23                                     Rafey S. Balabanian (SBN 315962)

24                                     rbalabanian@edelson.com
                                        Todd Logan (SBN 305912)

25                                     tlogan@edelson.com
                                        Brandt Silver-Korn (SBN 323530)

26                                     bsilverkorn@edelson.com
                                        EDELSON PC

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9495

# Exhibit 5

Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043



google-legal-support@google.com
www.google.com

January 23, 2020

***Via Email and Express Courier***
*tlogan@edelson.com*

Todd Logan
Edelson PC
123 Townsend Street, Suite 100
San Francisco, California 94107
415-638-9660

Re: ***Sean Wilson v. PTT, LLC, d/b/a High 5 Games, LLC***, United States District Court for the Western District of Washington, 18-cv-05275-RBL (Internal Ref. No. 3412025)

Dear Todd Logan:

Google LLC ("Google"), a non-party to your litigation, has received your subpoena, dated January 13, 2020, in the above-referenced matter (the "Subpoena"). As we understand it, your Subpoena requests documents related to the purported Google Play accounts associated with SEAN WILSON, HIGH 5 CASINO, HIGH 5 VEGAS.

At this point, however, as set forth below in the objections, it is not clear precisely what information the Subpoena is requesting. Because Google is unable to discern the scope of the Subpoena, Google is unable to respond to the Subpoena as currently presented. Google further hereby makes the following objections to the Subpoena.

**Insufficient Information**

Given the limited information provided in the Subpoena, Google objects to the Subpoena because it is unable to determine whether there is a relevant account in our records pertaining to SEAN WILSON, HIGH 5 CASINO, HIGH 5 VEGAS. As an initial matter, Google cannot respond to your request because it fails to sufficiently identify a Google account. Google has hundreds of millions of users, making it impossible to ensure that searches based on proper name, company name, birthday, social security number, presumed location, or similar information accurately identify the correct records.

**User Notification**

Google objects to the Subpoena to the extent it fails to allow sufficient time for Google to notify the affected user and for the user to assert his or her rights in response. Google provides its users at least 21 days to object to your request or to inform Google of their intent to file a motion to quash. If your subpoena sufficiently identifies a Google account, Google intends to forward notice of this matter, including your name and contact information, to the user at the email address provided by the user.

**Additional Objections**

1. Google objects to the Subpoena to the extent it seeks to impose an undue burden on a disinterested non-party. Google further objects to the Subpoena to the extent it seeks information already in a party's possession or available to a party from some other source (including public sources) that is more convenient, less burdensome or less expensive. Google objects to the Subpoena to the extent it seeks electronically stored information that is not reasonably accessible

Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043



google-legal-support@google.com
www.google.com

to Google.

2. Google objects to the Subpoena to the extent it seeks information that is not proportionate to the needs of the case, not relevant to any party's claims or defenses, or not reasonably calculated to lead to the discovery of admissible evidence.

3. Google objects to the Subpoena to the extent it specifies a date of production that is unreasonable and unduly burdensome, including because it may not afford Google time to provide sufficient notice to the user.

4. Google objects to the Subpoena (including but not limited to Requests #1 and #2) to the extent that it is vague, ambiguous, unlimited in time or scope, or fails to identify the information sought with reasonable particularity. Accordingly, Google further objects to the Subpoena to the extent it purports to require Google to preserve the requested information. Therefore you should not assume that Google will undertake steps to preserve any information in response to your Subpoena. Google is willing to meet and confer to discuss any preservation request.

5. Google objects to the Subpoena to the extent it seeks to impose obligations on Google beyond what is permissible under applicable law.

Google reserves the right to further object to the Subpoena in any additional response.

If you have any questions, please feel free to contact the undersigned at the Legal Support Department alias at GOOGLE-LEGAL-SUPPORT@GOOGLE.COM. Additionally, should you wish to seek any judicial relief in connection with this matter, Google requests the opportunity to meet and confer in advance of any such filing. Thank you.

Very truly yours,
/s/ Molly O'Neil
Legal Investigations Support

# Exhibit 6

Honorable Ronald B. Leighton

1

2

3

4

5

6

7  UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

8

9  SEAN WILSON, individually and on behalf
of all other similarly situated,

NO. 3:18-cv-05275-RBL

Plaintiff,

10  **MOTION AND MEMORANDUM IN
SUPPORT OF MOTION FOR
PROTECTIVE ORDER RE
PLAINTIFF'S SUBPOENAS TO
APPLE INC. AND GOOGLE LLC**

v.

11  PTT, LLC, a Delaware limited liability
company d/b/a HIGH 5 GAMES, LLC, a
Delaware limited liability company,

12

13  **NOTE ON MOTION CALENDAR:
February 7, 2020**

Defendant.

14

15

16

17

18

19

20

21

22

23

24

25

26

MOTION AND MEMORANDUM IN
SUPPORT OF MOTION FOR
PROTECTIVE ORDER RE PLAINTIFF'S
SUBPOENAS TO APPLE INC. AND
GOOGLE LLC
(3:18-CV-05275-RBL)

**HOLLAND & HART LLP**
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000 ● FAX:
208.343.8869

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................... 1

II. BACKGROUND ..................................................................................... 1

III.   ARGUMENT ........................................................................................ 3

   A. The Subpoenas Improperly Seek Data Reflecting Purchases Outside The State
     Of Washington. ................................................................................... 4

   B. The Subpoenas Improperly Seek Purchase Data Outside The Statute of
     Limitations. ........................................................................................ 5

   C. The Subpoenas Improperly Seek Data From In-App Purchases In High 5 Vegas.
     6

     1. No claim arising from High 5 Vegas has been alleged, and Wilson may not
       use the Subpoenas to develop new, unpleaded claims. ................................... 6

     2. As an additional and independent basis, the Court should bar production
       related to High 5 Vegas because Wilson lacks standing to pursue any claim
       arising from High 5 Vegas. ............................................................................. 7

   D. Wilson And His Counsel May Not Obtain Names Or Contact Information Of
     Putative Class Members Unless And Until A Class Is Certified. ...................... 10

IV.   CONCLUSION .................................................................................. 11

MOTION AND MEMORANDUM IN
SUPPORT OF MOTION FOR
PROTECTIVE ORDER RE PLAINTIFF'S
SUBPOENAS TO APPLE INC. AND
GOOGLE LLC-i
(3:18-CV-05275-RBL)

**HOLLAND & HART LLP**
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000 ● FAX:
208.343.8869

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

### CASES

4

*Bess v. Ocwen Loan Servicing, LLC*,

5
    No C15-5020, 2018 WL 3625335 (W.D. Wash. May 10, 2018) ........................ 10

6

*Broyles v. Convergent Outsourcing, Inc.*,
    No. C16-775-RAJ, 2017 WL 2256773 (W.D. Wash. May 23, 2017) ................................ 10

7

8

*Cabell v. Zorro Prods., Inc.*,
    294 F.R.D. 604 (W.D. Wash. 2013) ................................................................................ 3, 4

9

*Daniels Sharpsmart, Inc. v. Smith*,

10
    889 F.3d 608 (9th Cir. 2018) ................................................................................................ 4

11

*DeFreitas v. Tillinghast*,
    No. 2:12-CV-00235-JLR, 2013 WL 209277 (W.D. Wash. Jan. 17, 2013) .......................... 4

12

13

*Dysthe v. Basic Research LLC*,
    No. CV 09-8013 AG, 2011 WL 5868307 (C.D. Cal. June 13, 2011) ............................. 7, 8

14

*Hart v. Clark Cnty.*,

15
    758 P.2d 515 (Wash. Ct. App. 1988) .................................................................................. 6

16

*Healy v. Beer Inst.*,
    491 U.S. 324 (1989) ............................................................................................................. 4

17

18

*Heitfeld v. Benevolent & Protective Order of Keglers*,
    220 P.2d 655 (Wash. 1950) ................................................................................................. 5

19

*In re Williams Sonoma, Inc.*,

20
    2020 WL 131360, --- F.3d --- (9th Cir. 2020) .................................................................. 10

21

*Johns v. Bayer Corp.*,
    2010 WL 476688 (S.D. Cal. Feb. 9, 2010) ......................................................................... 7

22

*Miller v. Ghirardelli Chocolate Co.*,

23
    912 F. Supp. 2d 861 (N.D. Cal. 2012) ............................................................................. 7, 8

24

*Murphy v. Nat'l Collegiate Athletic Ass'n*,
    138 S.Ct. 1461 (2018) ......................................................................................................... 5

25

*S.R.L. v. Full Speed Ahead, Inc.*,

26
    No. C08-1372 RSM, 2010 WL 11527270 (W.D. Wash. Jan. 4, 2010) ................................ 4

MOTION AND MEMORANDUM IN
SUPPORT OF MOTION FOR
PROTECTIVE ORDER RE PLAINTIFF'S
SUBPOENAS TO APPLE INC. AND
GOOGLE LLC-ii
(3:18-CV-05275-RBL)

**HOLLAND & HART LLP**
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000 ● FAX:
208.343.8869

*Sam Francis Found. v. Christies, Inc.*,
   784 F.3d 1320 (9th Cir. 2015) ........................................................................ 4, 5

*T-Mobile USA, Inc. v. Huawei Device USA, Inc.*,
   No. C14-01351 RAJ, 2016 WL 1597102 (W.D. Wash. Apr. 20, 2016) .............................. 7

*Tri-Star Elecs. Int'l, Inc. v. Preci-Dip Durtal SA*,
   No. CV 08-04226 GAF, 2012 WL 12964849 (C.D. Cal. Mar. 27, 2012) .......................... 6

*U.S. Bank N.A. for Truman 2012 SC2 Tit. Trust v. Dirwayi*,
   No. C17-5532 BHS, 2018 WL 1726402 (W.D. Wash. Apr. 10, 2018) ............................. 5

*Wash. Environmental Council v. Bellon*,
   732 F.3d 1131 (9th Cir. 2013) ........................................................................... 7

*Wilson v. Frito-Lay N. Am. Inc.*,
   961 F. Supp. 2d 1134 (N.D. Cal. 2013) ........................................................... 6, 7

### STATUTES

RCW 4.16.130 ................................................................................................. 5

RCW 4.24.070 ................................................................................................. 5

RCW 19.86.120 ............................................................................................... 5

Washington Consumer Protection Act (RCW 19.86.010, *et seq.*) .............................. 5

### OTHER AUTHORITIES

Fed. R. Civ. P. 23 ............................................................................................ 4

Fed. R. Civ. P. 26 ............................................................................................ 3

LCR 26 ........................................................................................................ 3

MOTION AND MEMORANDUM IN
SUPPORT OF MOTION FOR
PROTECTIVE ORDER RE PLAINTIFF'S
SUBPOENAS TO APPLE INC. AND
GOOGLE LLC-iii
(3:18-CV-05275-RBL)

HOLLAND & HART LLP
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000  ●  FAX:
208.343.8869

## I.      INTRODUCTION

High 5 seeks a protective order to limit any production from Apple, Inc. ("Apple") or Google LLC ("Google") of High 5's in-app purchase data to a relevant scope, within Rule 26 discovery limits.   The discovery requests in the subpoenas Plaintiff Wilson served on Apple and Google are far overbroad.  The subpoenas seek in-app purchase history without geographical or temporal limit, even though Wilson's and putative class members' claims cannot reach beyond purchases in Washington, within the statute of limitations.  The subpoenas also improperly seek purchase information from High 5 Vegas, an application that is not part of the claims alleged in the Complaint, that Wilson never used, and that is materially different to the application Wilson did use, High 5 Casino.  A user of High 5 Vegas cannot run out of free virtual coins at any point in time.  High 5 requests a protective order limiting the scope of production to solely Washington transactions from High 5 Casino during the longest potential limitations period (April 7, 2014 to the present).

Further, to the extent Apple or Google has and intends to produce the names or contact information of the individuals who made purchases responsive to the subpoenas, High 5 requests that names and contact information be withheld or redacted from any production.

## II.     BACKGROUND

On January 13, 2020, Wilson's counsel sent notice to High 5 that Wilson had served subpoenas on Apple and Google.  Declaration of Jennifer M. Jensen ("Jensen Decl."), Ex. A (Subpoena to Apple); *id.*, Ex. B (Subpoena to Google).

The subpoenas to Apple and Google (collectively the "Subpoenas") contain substantially similar requests, which High 5 challenges in this Motion:

### REQUEST FOR PRODUCTION NO. 1

Documents sufficient to identify all Virtual Chip Transactions in each of the following casino apps offered on the Apple App Store: High 5 Casino and High 5 Vegas.

### REQUEST FOR PRODUCTION NO. 2

MOTION AND MEMORANDUM IN
SUPPORT OF MOTION FOR
PROTECTIVE ORDER RE PLAINTIFF'S
SUBPOENAS TO APPLE INC. AND
GOOGLE LLC-1
(3:18-CV-05275-RBL)

**HOLLAND & HART LLP**
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000  ●  FAX:
208.343.8869

1

2

Documents sufficient to identify all Purchase Information for all
Virtual Chip Transactions responsive to Request for Production No. 1.

3

*Id.*, Ex. A at 5.

4

### REQUEST FOR PRODUCTION NO. 1

5

6

Documents sufficient to identify all Virtual Chip Transactions in each
of the following casino apps offered on the Google Play Store: High 5 Casino
and High 5 Vegas.

7

### REQUEST FOR PRODUCTION NO. 2

8

Documents sufficient to identify the Purchase Information for all
Virtual Chip Transactions responsive to Request for Production No. 1.

9

10

*Id.*, Ex. B at 5.

11

12

13

14

The Subpoenas define "Virtual Chip Transactions" identically as "a transaction where
a casino app user exchanges money for Virtual Chips." *Id.*, Ex. A at 4; *id.*, Ex. B at 4.  The
Subpoenas define "Purchase Information" identically as "the Date, time, dollar amount,
number of Virtual Chips purchased, and UserID associated with a Virtual Chip Transaction."
*Id.*, Ex. A at 3; *id.*, Ex. B at 3.

15

16

17

18

Counsel for High 5 attempted to contact via telephone and email counsel in Apple's
and Google's legal departments concerning the Subpoenas.  Jensen Decl., ¶¶ 4-5.  High 5's
counsel received no response from Apple's legal department.  *Id.*

19

20

21

On January 27, 2020, High 5's counsel received an email from Google's legal
department stating that it had served objections to Wilson's counsel but did not attach a copy
of the objections.  *Id.*

22

23

24

25

26

The next day, counsel for High 5 and counsel for Wilson held a telephone conference
and met and conferred in good faith about Requests for Production 1 and 2 in the Subpoenas.
*Id.*, ¶ 6.  Wilson's counsel represented he had not received any response from Apple.
Wilson's counsel stated that a copy of Google's objections would only be provided to High
5's counsel if Google had no objection to sharing the copy.  *Id.*  Wilson's counsel gave High

MOTION AND MEMORANDUM IN
SUPPORT OF MOTION FOR
PROTECTIVE ORDER RE PLAINTIFF'S
SUBPOENAS TO APPLE INC. AND
GOOGLE LLC-2
(3:18-CV-05275-RBL)

**HOLLAND & HART LLP**
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000  •  FAX:
208.343.8869

1   5's counsel the name of the individual who had served the objections. *Id.* It was the same

2   individual who had emailed High 5's counsel. *Id.* High 5's counsel sought from Google's

3   legal department a copy of the objections. *Id.* On January 30, 2020, by return email,

4   Google's legal department stated its refusal to provide the objections to High 5's counsel. *Id.*

5        The parties were unable to reach a mutually agreeable compromise on the scope of the

6   Subpoenas, necessitating this Motion. *Id.*, ¶ 7.

7   **III.   ARGUMENT**

8        Federal Rule of Civil Procedure "26(c)(1) permits a party to seek a protective order

9   from the presiding court in order to restrict the party seeking discovery from pursuing certain

10  requests on third parties." *Cabell v. Zorro Prods., Inc.*, 294 F.R.D. 604, 607 (W.D. Wash.

11  2013) (granting party's motion for protective order related to an overbroad subpoena seeking

12  information on the party's sales and the party's business relationship with licensees); *see also*

13  Fed. R. Civ. P. 26(b)(2)(C) ("On motion or on its own, the court must limit the frequency or

14  extent of discovery otherwise allowed by these rules or by local rule if it determines that: . . .

15  the proposed discovery is outside the scope permitted by Rule 26(b)(1).").

16       Discovery requests, including subpoenas, fall outside the scope of discovery when

17  they seek information irrelevant to any party's claim or defense or fail Rule 26's

18  proportionality test. Fed. R. Civ. P. 26(b)(1) (limiting the scope of discovery to "any

19  nonprivileged matter that is relevant to any party's claim or defense and proportional to the

20  needs of the case, considering the importance of the issues at stake in the action, the amount

21  in controversy, the parties' relative access to relevant information, the parties' resources, the

22  importance of the discovery in resolving the issues, and whether the burden or expense of the

23  proposed discovery outweighs its likely benefit"). Local Rule 26(f) provides that "[t]o further

24  the application of the proportionality standard in discovery, discovery requests and related

25  responses should be reasonably targeted, clear, and as specific as possible."

26

MOTION AND MEMORANDUM IN
SUPPORT OF MOTION FOR
PROTECTIVE ORDER RE PLAINTIFF'S
SUBPOENAS TO APPLE INC. AND
GOOGLE LLC-3
(3:18-CV-05275-RBL)

**HOLLAND & HART LLP**
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000  ●  FAX:
208.343.8869

"Where the relevance of the requested information is low, avoiding the harm that comes with the burden of overbroad discovery constitutes 'good cause' for a protective order." *Cabell*, 294 F.R.D. at 609 (quoting *DeFreitas v. Tillinghast*, No. 2:12-CV-00235-JLR, 2013 WL 209277, at *3 (W.D. Wash. Jan. 17, 2013)); *see also S.R.L. v. Full Speed Ahead, Inc.*, No. C08-1372 RSM, 2010 WL 11527270, at *2 (W.D. Wash. Jan. 4, 2010) (considering burden to third parties to produce pursuant to overbroad document requests in subpoenas and granting defendant's motion for protective order).

### A.   The Subpoenas Improperly Seek Data Reflecting Purchases Outside The State Of Washington.

Only in-app purchases made in the State of Washington are potentially relevant to the claims in this lawsuit.  First, the Complaint does not seek a class of individuals who made purchases anywhere but in Washington.  The Complaint alleges, "**Class Definition**: Plaintiff Wilson brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of himself and a Class of similarly situated individuals, defined as follows:  All persons in the State of Washington who purchased and lost chips by wagering at Defendant High 5 Games' online casino games."  Dkt. 1 (Complaint), ¶ 32.  There is no valid claim that purchases outside Washington are part of this lawsuit.  They are not properly discoverable, especially through this end-run attempt to obtain them from third parties.

Second, even if the Complaint alleged claims involving purchases outside Washington, those claims would be invalidated by extraterritoriality principles and the Dormant Commerce Clause.  The Dormant Commerce Clause "'precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State.'"  *Daniels Sharpsmart, Inc. v. Smith*, 889 F.3d 608, 614 (9th Cir. 2018) (quoting *Healy v. Beer Inst.*, 491 U.S. 324, 336 (1989)) (upholding preliminary injunction against regulators' attempts to enforce California regulations against California waste disposal company's conduct outside the state).  For example, the Ninth

MOTION AND MEMORANDUM IN
SUPPORT OF MOTION FOR
PROTECTIVE ORDER RE PLAINTIFF'S
SUBPOENAS TO APPLE INC. AND
GOOGLE LLC-4
(3:18-CV-05275-RBL)

**HOLLAND & HART LLP**
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000  ●  FAX:
208.343.8869

1  Circuit held a California statute violated the Dormant Commerce Clause when the statute

2  required a royalty be paid on art purchases if the seller was a California resident.  *Sam*

3  *Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1323-24 (9th Cir. 2015).  The court

4  reasoned that the statute regulated art purchases that might entirely occur outside California,

5  and the fact a California resident was on one side of the transaction was not enough to save

6  the statute from violating the Dormant Commerce Clause.  *See id.* at 1323 ("We easily

7  conclude that the royalty requirement, as applied to out-of-state sales by California residents,

8  violates the dormant Commerce Clause.").

9        Purchases that occurred outside the State of Washington are irrelevant to the claims in

10  this lawsuit.  To hold that Washington statutes applied extraterritorially would improperly

11  interpret the statutes as violating the Dormant Commerce Clause.  *See Murphy v. Nat'l*

12  *Collegiate Athletic Ass'n*, 138 S.Ct. 1461, 1475 (2018) (citing "the canon of interpretation that

13  a statute should not be held to be unconstitutional if there is any reasonable interpretation that

14  can save it").

15        **B.      The Subpoenas Improperly Seek Purchase Data Outside The Statute of
16               Limitations.**

17        Apple and Google should not produce any purchase information predating April 7,

18  2014.  Wilson has alleged three causes of action, for which the longest statute of limitations is

19  four years.  The Subpoena seeks data reflecting in-app purchases that occurred outside the

20  limitations period.  Such purchase information has no relevance to Wilson's or any absent

21  putative class members' claims and is outside the scope of permissible discovery.

22        The longest potential statute of limitations in this lawsuit is four years.  Wilson has

23  asserted three causes of action: Recovery of Money Lost at Gambling (RCW 4.24.070),

24  Washington Consumer Protection Act (RCW 19.86.010, *et seq.*), and Unjust Enrichment.

25  Dkt. 1 (Complaint).  These causes of action have statutes of limitation of four years or less.

26  *See* RCW 19.86.120 (Washington Consumer Protection Act, four years); RCW 4.16.130

MOTION AND MEMORANDUM IN
SUPPORT OF MOTION FOR
PROTECTIVE ORDER RE PLAINTIFF'S
SUBPOENAS TO APPLE INC. AND
GOOGLE LLC-5
(3:18-CV-05275-RBL)

HOLLAND & HART LLP
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000  ●  FAX:
208.343.8869

1  (catchall statute of limitations, two years); *Heitfeld v. Benevolent & Protective Order of*

2  *Keglers*, 220 P.2d 655, 667 (Wash. 1950) (catchall statute of limitations applies to Recovery

3  of Money Lost at Gambling); *U.S. Bank N.A. for Truman 2012 SC2 Tit. Trust v. Dirwayi*, No.

4  C17-5532 BHS, 2018 WL 1726402, at *7 (W.D. Wash. Apr. 10, 2018) (quoting *Hart v. Clark*

5  *Cnty.*, 758 P.2d 515, 516 (Wash. Ct. App. 1988)) (unjust enrichment, three years).

6       The Subpoenas seek purchase information on in-app purchases with no specified date

7  range, meaning purchases from more than four years before the Complaint (filed April 6,

8  2018) are arguably within the scope of documents requested.  This is improper.  While

9  purchases within the limitations period (April 7, 2014 and later) may be relevant to alleged

10  damages, purchases outside the limitations period have no relevance to the claims or defenses

11  in this case.  Further, such information is not proportional to the needs of the case, the issues

12  at stake, or the importance of the discovery in resolving any issue.

13       The Court should order that Apple and Google not produce any purchase information

14  predating April 7, 2014.

15       **C.**    **The Subpoenas Improperly Seek Data From In-App Purchases In High 5 Vegas.**

16

17       **1.**    **No claim arising from High 5 Vegas has been alleged, and Wilson may not use the Subpoenas to develop new, unpleaded claims.**

18

19       High 5 Vegas is not part of this lawsuit.  No claim arising from High 5 Vegas has been

20  alleged.  A passing reference to a product plaintiff does not allege he used does not constitute

21  a claim based on that product.  *See Wilson v. Frito-Lay N. Am. Inc.*, 961 F. Supp. 2d 1134,

22  1141-42 (N.D. Cal. 2013) (named plaintiffs had not stated a claim as to unpurchased products

23  when they only listed names of products they had not purchased and stated without

24  underlying facts that the unpurchased products were "the same or similar" to the products

25  named plaintiffs had purchased).

26

MOTION AND MEMORANDUM IN
SUPPORT OF MOTION FOR
PROTECTIVE ORDER RE PLAINTIFF'S
SUBPOENAS TO APPLE INC. AND
GOOGLE LLC-6
(3:18-CV-05275-RBL)

**HOLLAND & HART LLP**
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000  ●  FAX:
208.343.8869

1    A party may not use "discovery to develop new claims that are not already identified

2    in the pleadings." Fed. R. Civ. P. 26 advisory committee note to 2000 amendment; *see also*

3    *Tri-Star Elecs. Int'l, Inc. v. Preci-Dip Durtal SA*, No. CV 08-04226 GAF (AJWx), 2012 WL

4    12964849, at \*3-4 (C.D. Cal. Mar. 27, 2012) (affirming denial of motion to compel because

5    information sought was related to an unpleaded unfair competition theory and noting that a

6    "stray allegation does not automatically become the basis of all claims that later incorporate it

7    by reference."); *T-Mobile USA, Inc. v. Huawei Device USA, Inc.*, No. C14-01351 RAJ, 2016

8    WL 1597102, at \*2 (W.D. Wash. Apr. 20, 2016) (granting motion for protective order

9    because discovery was not relevant to any party's claim or defense).

10    Here, other than one passing reference to High 5 Vegas in the Complaint (¶ 1), there is

11    nothing to indicate High 5 Vegas has any relation to this lawsuit at all. Plaintiff did not play

12    High 5 Vegas. *See* ECF No. 1. There is no claim arising from High 5 Vegas. No production

13    pursuant to the Subpoenas, relating to High 5 Vegas should be permitted.

14

15    **2.    As an additional and independent basis, the Court should bar**
      **production related to High 5 Vegas because Wilson lacks standing**

16    **to pursue any claim arising from High 5 Vegas.**

17    Additionally, Wilson lacks standing to pursue claims arising from High 5 Vegas, an

18    app he never used, which is materially different from High 5 Casino. Standing is the

19    plaintiff's burden to prove. *Wash. Environmental Council v. Bellon*, 732 F.3d 1131, 1139

20    (9th Cir. 2013). Courts have held that a named plaintiff in a putative class action lacks

21    standing to pursue claims on behalf of absent class members arising from products the named

22    plaintiff did not purchase, unless the product named plaintiff purchased and the related

23    analysis of the legal elements are identical in all material respects to the products he did not

24    purchase and legal analysis related to the unpurchased products. *See, e.g.*, *Frito-Lay N. Am.*

25    *Inc.*, 961 F. Supp. 2d at 1141-42 (named plaintiffs lacked standing to pursue claims arising

26    from products they did not purchase); *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d

MOTION AND MEMORANDUM IN
SUPPORT OF MOTION FOR
PROTECTIVE ORDER RE PLAINTIFF'S
SUBPOENAS TO APPLE INC. AND
GOOGLE LLC-7
(3:18-CV-05275-RBL)

HOLLAND & HART LLP
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000 ● FAX:
208.343.8869

1  861, 870-72 (N.D. Cal. 2012) (same); *Dysthe v. Basic Research LLC*, No. CV 09-8013 AG

2  (SSx), 2011 WL 5868307, at *4 (C.D. Cal. June 13, 2011) (dismissing claim as to product

3  named plaintiff did not buy); *Johns v. Bayer Corp.*, 2010 WL 476688, at *5 (S.D. Cal. Feb. 9,

4  2010) (same).

5       For instance, in *Miller*, differences in white chocolate products would affect how the

6  court would analyze the element of misrepresentation, so the named plaintiffs lacked standing

7  to assert claims as to white chocolate products they had not purchased.  912 F. Supp. 2d at

8  870-72; *see also Dysthe*, 2011 WL 5868307, at *4 (differences in ingredients and packaging

9  of products would affect whether advertising of the products was false, so named plaintiff

10 lacked standing to assert claims as to unpurchased product).

11      Here, material differences between High 5 Casino and High 5 Vegas, two separate

12 High 5 apps, defeat any notion that Wilson has standing to assert claims arising from High 5

13 Vegas.  As described more fully below, in High 5 Vegas, a player cannot run out of free

14 virtual coins at any point in the game play because there is a constant free virtual coin flow, in

15 addition to other opportunities to obtain free virtual coins. *See* Declaration of Philip Welty

16 ("Welty Decl."), ¶ 4.  And the High 5 Vegas platform does not even offer the game called

17 "Bah Humbug!" which Wilson played the session he made his only purchase in High 5

18 Casino. *Id.*, ¶ 6; ECF No. 23-7.

19      High 5 Casino and High 5 Vegas are two different social gaming applications created

20 by High 5.  Welty Decl., ¶ 2.  Each must be downloaded separately from an app store in order

21 to be used by a consumer on a mobile device or in separate pages on a web browser if using

22 on a personal computing device. *Id.*  Each must be opened and played separately. *Id.*  The

23 virtual coins in High 5 Casino cannot be transferred to High 5 Vegas, nor can the virtual coins

24 in High 5 Vegas be transferred to High 5 Casino. *Id.*

25      For background, both High 5 Casino and High 5 Vegas offer players free virtual coins.

26 *Id.*, ¶ 3.  Both applications offer a first-time player an allotment of free virtual coins. *Id.*  A

MOTION AND MEMORANDUM IN
SUPPORT OF MOTION FOR
PROTECTIVE ORDER RE PLAINTIFF'S
SUBPOENAS TO APPLE INC. AND
GOOGLE LLC-8
(3:18-CV-05275-RBL)

HOLLAND & HART LLP
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000  ●  FAX:
208.343.8869

Case 3:18-cv-05275-RBL   Document 80   Filed 01/30/20   Page 13 of 17

player is a first-time player upon entering each of the applications for the first time. *Id.* That is, a long-time player of High 5 Casino is a first-time player of High 5 Vegas the first time he or she downloads and opens High 5 Vegas. *Id.* But after a first-time player receives his or her first allotment of free virtual coins, further free virtual coins are available in High 5 Casino and High 5 Vegas through different means. *Id.*

High 5 Vegas offers free virtual coins on a constant, ongoing basis so that the player never runs out of virtual coins. *Id.*, ¶ 4. In the High 5 Vegas app, the top center portion of the screen displays a free virtual coin counter under a button marked "COLLECT." *Id.* The free virtual coin counter is constantly ticking up the balance of available free virtual coins. *Id.* Whether the app is open or closed, the counter continues until it reaches a set maximum. *Id.* At any point in time, the player may push the "COLLECT" button, and the free virtual coins will be added to his or her bank of virtual coins. *Id.* The free virtual coin counter resumes ticking upward immediately upon collection. *Id.* High 5 Vegas offers additional free virtual coins including with a daily bonus. *Id.* One of the primary means of collecting free virtual coins in High 5 Vegas, however, is by pushing the "COLLECT" button to harvest the constantly accruing virtual coins. *Id.* A player of High 5 Vegas may collect free virtual coins without exiting a game and going to the app's "lobby." *Id.*

High 5 Casino offers free virtual coins through different means. *Id.*, ¶ 5. Free virtual coins are available to a player by opening the app and collecting coins every four hours, through a daily bonus, and free spins of a wheel in the app's "lobby," (known as "lobby spins"), among other ways. *Id.* Unlike High 5 Vegas, High 5 Casino does not offer free virtual coins through a virtual coin counter that constantly ticks up a balance of available coins. *Id.*

The High 5 Casino and High 5 Vegas applications are platforms that provide numerous games to play within the respective application. *Id.*, ¶ 6. High 5 Casino's platform provides a user with a number of unique games to play, and High 5 Vegas's platform provides

MOTION AND MEMORANDUM IN
SUPPORT OF MOTION FOR
PROTECTIVE ORDER RE PLAINTIFF'S
SUBPOENAS TO APPLE INC. AND
GOOGLE LLC-9
(3:18-CV-05275-RBL)

HOLLAND & HART LLP
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000 ● FAX:
208.343.8869

1 a user with a number of unique games to play. *Id.* Several of the games available on High 5

2 Casino, including the game called "Bah, Humbug!" and several of the games that Plaintiff

3 Wilson played on High 5 Casino, are not available on High 5 Vegas. *Id.* Several of the

4 games available on High 5 Vegas are not available on High 5 Casino. *Id.*

5   These differences between High 5 Casino (which Wilson played) and High 5 Vegas

6 (which Wilson did not play) affect the legal analysis of Wilson's and absent class members'

7 claims, including elements of causation, "thing of value," public interest, harm, and damages.

8 Because Wilson lacks standing as to High 5 Vegas, no production related to High 5 Vegas

9 may be permitted.

10   **D. Wilson And His Counsel May Not Obtain Names Or Contact Information**

11     **Of Putative Class Members Unless And Until A Class Is Certified.**

12   To the extent Apple's or Google's responsive data contains the names or contact

13 information of the individuals making in-app purchases, names and contact information

14 should not be provided to Wilson or his counsel.[1] Names and contact information of putative

15 class members is not discoverable precertification. The Ninth Circuit recently granted

16 mandamus on this very issue, holding a district court clearly erred by ordering defendant to

17 produce the names of customers who had purchased the product from which the putative class

18 action arose. *In re Williams Sonoma, Inc.*, 2020 WL 131360, --- F.3d --- (9th Cir. 2020). The

19 Ninth Circuit reasoned that disclosure of the list of customer names pre-certification, even if

20 relevant to class certification issues, would cause harm and prejudice to defendant that could

21 not be corrected on appeal. *Id.; see also Bess v. Ocwen Loan Servicing, LLC*, No C15-5020,

22 2018 WL 3625335, at *1-2 (W.D. Wash. May 10, 2018) (holding production of "all class

23 members' contact information" during precertification stage "unnecessarily burdensome for

24

---

[1] Counsel for Wilson confirmed during the meet and confer call on January 28, 2020 that the
25 Subpoenas were not intended to seek names or contact information of absent class members.
Jensen Decl., ¶ 6. But High 5 includes this argument in the event that Apple or Google have
26 and intend to produce such information with the information responsive to the Subpoenas.

MOTION AND MEMORANDUM IN
SUPPORT OF MOTION FOR
PROTECTIVE ORDER RE PLAINTIFF'S
SUBPOENAS TO APPLE INC. AND
GOOGLE LLC-10
(3:18-CV-05275-RBL)

**HOLLAND & HART LLP**
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000 ● FAX:
208.343.8869

1  questions of class certification"); *Broyles v. Convergent Outsourcing, Inc.*, No. C16-775-RAJ,

2  2017 WL 2256773, at *4 (W.D. Wash. May 23, 2017) (denying motion to compel "names,

3  addresses, and telephone numbers of all putative class members").

4        The Court should order that, to the extent Apple's or Google's responsive information

5  includes names or contact information of putative class members, that information must not

6  be produced, or must be redacted from the production.

7  **IV.  CONCLUSION**

8        For all of the foregoing reasons, High 5 requests that the Court enter a protective

9  order:

10      • Limiting any production of purchase information from Apple and Google to

11        purchases (1) in Washington, (2) between April 7, 2014 and the present, and (3)

12        from the High 5 Casino app.

13      • Precluding production or requiring redaction of customer names and contact

14        information.

15  DATED this 30th day of January, 2020.

16

17                      *s/ Christopher A. Wright*
                    Christopher A. Wright, WSBA #26601

18                      Emilia J. Sweeney, WSBA #23371
                    Attorneys for Defendant

19                      CARNEY BADLEY SPELLMAN, P.S.
                    701 Fifth Avenue, Suite 3600

20                      Seattle, WA 98104
                    Tel: (206) 622-8020 / Fax: (206) 467-8215

21                      E-mail:  wright@carneylaw.com

22                                  sweeney@carneylaw.com

23

24

25

26

MOTION AND MEMORANDUM IN
SUPPORT OF MOTION FOR
PROTECTIVE ORDER RE PLAINTIFF'S
SUBPOENAS TO APPLE INC. AND
GOOGLE LLC-11
(3:18-CV-05275-RBL)

**HOLLAND & HART LLP**
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000  •  FAX:
208.343.8869

1

2          _s/ Erik F. Stidham_
           Erik F. Stidham (Admitted *Pro Hac Vice*)
3          Jennifer M. Jensen *(Admitted Pro Hac Vice)*
           Teague I. Donahey (Admitted *Pro Hac Vice*)
4          Attorneys for Defendant
           Holland & Hart LLP
5          800 W. Main Street, Suite 1750
           Boise, ID 83702
6          Tel: (208) 342-5000 / Fax: (208) 343-8869
           E-mail: efstidham@hollandhart.com
7                  jmjensen@hollandhart.com
                   tidonahey@hollandhart.com
8

9
           Robert C. Ryan (*Admitted Pro Hac Vice*)
10         Attorney for Defendant
           Holland & Hart LLP
11         5441 Kietzke Lane
           Reno, NV 89511
12         Tel: (775) 327-3000 / Fax: (775) 786-6179
           E-mail:  rcryan@hollandhart.com
13

14

15

16

17

18

19

20

21

22

23

24

25

26

MOTION AND MEMORANDUM IN
SUPPORT OF MOTION FOR
PROTECTIVE ORDER RE PLAINTIFF'S
SUBPOENAS TO APPLE INC. AND
GOOGLE LLC-12
(3:18-CV-05275-RBL)

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of January, 2020, I electronically filed the foregoing **MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER RE PLAINTIFF'S SUBPOENAS TO APPLE INC. AND GOOGLE LLC** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Attorneys for Plaintiff**
Cecily C. Shiel
TOUSLEY BRAIN STEPHENS PLLC
1700 7th Ave Ste 2200
Seattle WA  98101-4416
Tel: (206) 682-5600
cshiel@tousley.com

**Attorneys for Plaintiff**
Benjamin H. Richman
EDELSON PC
350 North LaSalle St 14th Fl
Chicago IL  60654
Tel: (312) 589-6370
brichman@edelson.com

**Attorneys for Plaintiff**
Todd Logan
Rafey S. Balabanian
Eve-Lynn Rapp
Brandt Silver-Korn
EDELSON PC
123 Townsend St Ste 100
San Francisco CA  94107
Tel: (415) 638-9660
tlogan@edelson.com
rbalabanian@edelson.com
erapp@edelson.com
bsilverkorn@edelson.com

*/s/ Stacy Gust*
Stacy Gust, Legal Assistant

MOTION AND MEMORANDUM IN
SUPPORT OF MOTION FOR
PROTECTIVE ORDER RE PLAINTIFF'S
SUBPOENAS TO APPLE INC. AND
GOOGLE LLC-13
(3:18-CV-05275-RBL)

HOLLAND & HART LLP
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000  ●  FAX:
208.343.8869

# Exhibit 7

THE HONORABLE RONALD B. LEIGHTON

1

2

3

4

5       **UNITED STATES DISTRICT COURT**
6       **WESTERN DISTRICT OF WASHINGTON**
        **AT TACOMA**
7

8
        SEAN WILSON, individually and on         Case No. 18-cv-05275-RBL
9       behalf of all others similarly situated,
                                                  **PLAINTIFF'S OPPOSITION TO**
10                          *Plaintiff,*          **DEFENDANT'S MOTION FOR A**
                                                  **PROTECTIVE ORDER RE**
11      v.                                        **PLAINTIFF'S SUBPOENAS TO**
                                                  **APPLE INC. AND GOOGLE LLC**
12      PTT, LLC, a Delaware limited liability
        company, d/b/a HIGH 5 GAMES, LLC,
13      a Delaware limited liability company,

14                          *Defendant.*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

ARGUMENT ......................................................................................................... 1

   1.  LEGAL STANDARD. ............................................................................... 1

   2.  PLAINTIFF DOES NOT OPPOSE HIGH 5'S "RELEVANT TIME
       PERIOD" AND "CLASS MEMBER CONTACT INFORMATION"
       OBJECTIONS. ...................................................................................... 2

   3.  PLAINTIFF SHOULD BE PERMITTED TO PURSUE THIRD-PARTY
       DISCOVERY INTO HIGH 5 VEGAS. .................................................... 2

   4.  PLAINTIFF SHOULD BE PERMITTED TO PURSUE DISCOVERY
       OF NATIONWIDE PURCHASE HISTORY DATA FROM APPLE
       AND GOOGLE. ...................................................................................... 5

CONCLUSION ..................................................................................................... 7

**TABLE OF AUTHORITIES**

**United States Circuit Court of Appeals Cases**

*Davidson v. Kimberly-Clark Corp.,*
    889 F.3d 956 (9th Cir. July 20, 2018) ........................................................... 4

**United States District Court Cases**

*Advocare Int'l, L.P. v. Scheckenbach,*
    No. 08-cv-5332-RBL, 2008 WL 5156424 (W.D. Wash. Dec. 8, 2008).......................... 1

*Clancy v. The Bromley Tea Co.,*
    308 F.R.D. 564 (N.D. Cal. 2013) ................................................................... 5

*Daimler Truck N. Am. LLC v. Younessi,*
    No. 08-CV-5011-RBL, 2008 WL 2519845 (W.D. Wash. June 20, 2008)...................... 1

*Miller v. Ghirardelli Chocolate Co.,*
    912 F. Supp. 2d 861 (N.D. Cal. 2012)............................................................ 4

*Silcox v. AN/PF Acquisitions Corp.,*
    No. 17-cv-1131-RSM, 2018 WL 1532779 (W.D. Wash. Mar. 29, 2018).....................2, 7

*Wilson v. Frito-Lay N. Am. Inc.,*
    961 F. Supp. 2d 1134 (N.D. Cal. 2013)........................................................... 4

*Wilson v. Playtika,*
    349 F. Supp. 3d 1028 (W.D. Wash. Nov. 20, 2019) .................................3, 4, 5

**<u>Miscellaneous Authority</u>**

Fed. R. Civ. P. 26 ......................................................................................1, 6

F.R.E. 401 ............................................................................................ 5

**ARGUMENT**

High 5 has filed a motion for a protective order seeking to narrow the scope of documents Plaintiff may pursue from third parties Google and Apple. *See* Dkt. 80 (the "Motion"). The Motion asks the Court to bar Plaintiff from pursuing third-party discovery into four categories of information: (1) putative class member contact information; (2) in-game transaction data predating April 7, 2014; (3) in-game transaction data from IP addresses outside of Washington; and (4) information related to High 5 Vegas (as distinguished from High 5 Casino). *See id.*

In an effort to minimize unnecessary burdens upon the Court, Plaintiff does not—for purposes of this motion—oppose High 5's objections regarding the first two categories of information. But because High 5 Vegas is squarely at issue in this putative class action case, the Court should permit Plaintiff to conduct third-party discovery into that social casino. And because information regarding in-game transaction data from IP addresses outside of Washington is both relevant to this case and necessary for Plaintiff to understand data High 5 previously produced in this case, the Court should permit Plaintiff to pursue discovery of nationwide purchase history data from Apple and Google.

Save for Plaintiff's concessions, the Motion should be denied.

**1.    LEGAL STANDARD.**

Parties may discover "any non-privileged matter that is relevant to any party's claim or defense" and that information "need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Advocare Int'l, L.P. v. Scheckenbach*, No. 08-cv-5332-RBL, 2008 WL 5156424, at *2 (W.D. Wash. Dec. 8, 2008) (quoting Fed. R. Civ. P. 26(b)(1)). Discovery of electronically stored information can be limited if production "is unreasonable due to its burden or cost." *Daimler Truck N. Am. LLC v. Younessi*, No. 08-CV-5011-RBL, 2008 WL 2519845, at *4 (W.D. Wash. June 20, 2008) (citing Fed. R. Civ. P. 26(b)(2)(B)). "The party seeking a protective order has the burden to demonstrate good cause, and must make 'a particular and specific demonstration of fact as distinguished from

1   stereotypical and conclusory statements' supporting the need for a protective order." *Silcox v.*

2   *AN/PF Acquisitions Corp.*, No. 17-cv-1131-RSM, 2018 WL 1532779, at *3 (W.D. Wash. Mar.

3   29, 2018) (citation omitted).

4

5   **2.    PLAINTIFF DOES NOT OPPOSE HIGH 5'S "RELEVANT TIME PERIOD" AND
        "CLASS MEMBER CONTACT INFORMATION" OBJECTIONS.**

6       In an effort to minimize unnecessary burdens upon the Court, Plaintiff begins with two

7   concessions. First, for purposes of this motion only,[1] Plaintiff does not oppose High 5's request

8   that Apple and Google limit responsive Purchase Information to purchases occurring on or after

9   April 7, 2014. *See* Motion, at 1. Furthermore, again for purposes of this motion only, Plaintiff

10  does not oppose High 5's request that Apple and Google refrain from producing the names or

11  contact information of putative class members. *Id.*

12      Plaintiff's counsel will communicate these concessions to Apple and Google before this

13  motion's noting date, and likewise will ensure that—in the likely event Plaintiff's counsel is

14  forced to pursue an enforcement action against Apple and Google in the United States District

15  Court for the Northern District of California—the court assigned to that enforcement action is

16  made aware of them. *See* Declaration of Todd Logan ("Logan Decl.") ¶ 3.

17  **3.    PLAINTIFF SHOULD BE PERMITTED TO PURSUE THIRD-PARTY
        DISCOVERY INTO HIGH 5 VEGAS.**

18

19      High 5 argues that Plaintiff may not pursue third-party discovery regarding "High 5 Vegas"

20  primarily because that social casino is "not part of the claims alleged in the Complaint" and is—

21  according to High 5 and its lawyers—"materially different" than "High 5 Casino." *See* Motion,

22  at 1. But the complaint puts High 5 Vegas squarely at issue, and there is no basis at this stage in

23  the case for the Court to determine as a matter of law that High 5 Vegas is so different than High

24  _____

25  [1]   To be clear, Plaintiff does not concede that Defendant's "Relevant Time Period" and "Class
    Member Contact Information" objections are meritorious. Plaintiff believes that Purchase

26  Information prior to April 2014 is relevant to, *inter alia*, his claims that High 5's business
    practices fall afoul of the CPA, and furthermore believes that—under the facts and circumstances

27  of this case—putative class member contact information is likely discoverable pre-certification.

28

---

PL'S OPP. TO MOT. FOR PROTECTIVE ORDER        2              CASE NO. 18-cv-05275-RBL

1   5 Casino that Plaintiff may not even pursue discovery as to the former. And while High 5 also

2   argues that Plaintiff lacks Article III standing to pursue class claims against High 5 Vegas

3   because he has not played that game, that argument is foreclosed in the Ninth Circuit.

4       Literally the first paragraph of the complaint identifies two specific social casino games,

5   owned and operated by Defendant, that Plaintiff challenges through this lawsuit: (1) High 5

6   Casino, and (2) High 5 Vegas. *See* Dkt. 1 ¶ 1. The complaint likewise makes clear that Plaintiff

7   seeks to represent not just High 5 Casino players but also High 5 Vegas players (and players of

8   High 5's other "online casino games."). *See id.* ¶ 32 (defining the proposed class as "All persons

9   in the State of Washington who purchased and lost chips by wagering at Defendant's High 5

10   Games' online casino games."). That puts High 5 Vegas at issue in this case.

11       It's true that Plaintiff does not allege he played High 5 Vegas, but that's of no moment here.

12   Plaintiff alleges that his claims are typical of the claims of other members of the proposed Class,

13   and furthermore alleges that common questions proposed by this action—which render class

14   treatment appropriate—include "[w]hether Defendant's online casino games are 'gambling' as

15   defined by RCW § 9.46.0237." *Id.* ¶ 34-35. Because this case is a proposed class action, that is

16   more than enough to put High 5 Vegas at issue. *See Wilson v. Playtika*, 349 F. Supp. 3d 1028,

17   1045 (W.D. Wash. Nov. 20, 2019) ("The defining feature of class actions is the plaintiff's ability

18   to assert claims on behalf of themselves and those similarly situated. It necessarily follows from

19   this that the plaintiff will claim damages for harms that they themselves did not suffer, with the

20   operative issue being whether those other harms are sufficiently similar to theirs.").

21       High 5's motion requests that the Court determine—as a matter of law, prior to the close of

22   class discovery, and before merits discovery has even begun—that High 5 Vegas is so materially

23   different than High 5 Casino that Plaintiff may not even pursue discovery as to the latter. *See*

24   Motion at 1, 7. That request puts the proverbial cart about a mile before the horse. The purpose

25   of conducting discovery into claims and allegations that survive the pleadings stage is to test

26   their veracity. Here, class discovery into High 5 Vegas will inform the parties' briefs on the

27

28

---

1    propriety of class certification. High 5 is of course entitled to argue—in its opposition to class

2    certification—that Wilson's claims are not typical of those of High 5 Vegas players, and

3    consequently that certification is improper. Plaintiff intends to prove otherwise, and respectfully

4    submits that High 5's attempt to draw a sharp distinction between "High 5 Casino" and "High 5

5    Vegas" falters even before one gets past the titles of the respective social casino apps,[2] but that is

6    beside the point. The salient point is that these arguments are supposed to be made during class

7    certification briefing, and are supposed to be supported by evidence obtained in discovery. As

8    the Court previously held in a related case:

9                Whether or not [Plaintiff's] specific harm is "typical" of the class
            will turn on how the transactions he entered into with [Defendant]
10          compare with the rest of the class. It will not necessarily turn on
            which specific games [Plaintiff] played, except to the extent the
11          games function differently such that [Plaintiff] entered into
            different types of transactions than some of the class members. In
12          any case, that question **should be addressed at the class
            certification stage**, since there is no indication at this point that [a
13          game Plaintiff did not allege playing] functions so uniquely that
            the allegations related to that game are "immaterial."
14

15   *Playtika*, 349 F. Supp. 3d at 1045 (emphasis added). That analysis applies with equal force here.

16       Relying chiefly on two outdated district court opinions from outside the Western District of

17   Washington (both in the consumer fraud context), High 5 also argues that Plaintiff lacks Article

18   III standing to pursue claims against High 5 Vegas. *See Motion at 7-10 (citing Wilson v. Frito-*

19   *Lay N. Am. Inc.*, 961 F. Supp. 2d 1134 (N.D. Cal. 2013) and *Miller v. Ghirardelli Chocolate Co.*,

20   912 F. Supp. 2d 861 (N.D. Cal. 2012)). As an initial matter, it bears noting that a motion for a

21   protective order over third-party discovery is an unusual and improper occasion for a defendant

22   to first raise purportedly constitutional deficiencies in a case.

23       In any event, Defendant's argument is foreclosed by Ninth Circuit precedent. *See Davidson*

24   *v. Kimberly-Clark Corp.*, 889 F.3d 956, 972 (9th Cir. July 20, 2018). In *Kimberly-Clark*, the

25   _____

26   [2]   It also bears noting that, in its motion to dismiss, High 5 made no distinction between High 5
     Casino and High 5 Vegas, and expressly sought dismissal of Plaintiff's claims as to both. *See*
27   Dkt. 34 at 21 (seeking dismissal of claims against "the High 5 games").

28

PL'S OPP. TO MOT. FOR PROTECTIVE ORDER        4              CASE NO. 18-cv-05275-RBL

1  plaintiff alleged that she had bought one of the defendant's four varieties of purportedly

2  "flushable" wipes (the "Scott Wipes" variety), but sought to certify claims on behalf of a class of

3  all persons who bought any of the four varieties of defendant's wipes. *Id.* at 962 (Plaintiff

4  "sought to certify a class of all persons who purchased Cottonelle Wipes, Scott Wipes, Huggies

5  Wipes, and Kotex Wipes."). After conducting a searching review of the district court's

6  conclusion that the plaintiff lacked Article III standing, the Ninth Circuit reversed. *Id.* at 972.

7  While the *Kimberly-Clark* opinion focuses primarily on the plaintiff's Article III standing to

8  pursue injunctive relief, the relevant takeaway here is that the Ninth Circuit—while squarely

9  focused on the issue of the plaintiff's Article III standing or lack thereof—did not bat an eye at

10  the notion that the plaintiff sought to certify a class of purchasers of Cottonelle Wipes, Huggies

11  Wipes, and Kotex Wipes. *See generally id.* The reason for that is simple: the issue Defendant

12  raises here isn't one of Article III standing; it is a typicality issue reserved for class certification

13  proceedings. *See Playtika*, 349 F. Supp. 3d at 1045; *accord Clancy v. The Bromley Tea Co.*, 308

14  F.R.D. 564, 571 (N.D. Cal. 2013) (rejecting *Frito-Lay* and *Ghirardelli*, and concluding that

15  "Transmogrifying typicality or commonality into an issue of standing would undermine the well-

16  established principles that '[i]n a class action, standing is satisfied if at least one named plaintiff

17  meets the requirements.'") (citation omitted). That extinguishes Defendant's Article III argument

18  here.

19  **4.    PLAINTIFF SHOULD BE PERMITTED TO PURSUE DISCOVERY OF
          NATIONWIDE PURCHASE HISTORY DATA FROM APPLE AND GOOGLE.**

20

21      Plaintiff does not dispute that the class he seeks to represent is limited to Washingtonians

22  and those who have gambling losses to High 5 that occurred in Washington. *See* Motion at 4-5.

23  Nor does Plaintiff contend that transactions that have no nexus to the state of Washington are at

24  issue in this case. *Id.* Nevertheless, the Court should permit Plaintiff to pursue discovery of

25  nationwide purchase history data from third-parties Apple and Google. Nationwide purchase

26  history data is absolutely *relevant*, as that word is contemplated by F.R.E. 401 and Fed. R. Civ.

27

28

1   P. 26(b), to the claims and defenses alleged in this case. *Cf. id.* (raising exclusively a relevance

2   objection, and declining to raise proportionality and/or burden objections). More to the point

3   here, in order to conduct adequately-informed depositions of High 5 witnesses, Plaintiff needs

4   access to nationwide transaction data from Apple and Google, which will speak to the accuracy

5   and completeness of the two vastly different, inconsistent datasets High 5 has produced to date.

6        By way of background, Plaintiff has been pursuing High 5 transaction history information

7   through traditional party-discovery Requests for Production for more than a year. Logan Decl. ¶

8   4. On December 10, 2019, High 5 finally produced a responsive dataset ("First Dataset"). *Id.* ¶ 5.

9   That same day, Plaintiff's counsel requested by email that High 5 identify "which transactions

10   are included in this file? (*e.g.*, are these transactions associated with Washington IP addresses? Is

11   it all Washington transactions during the included time period?)." *Id.* ¶ 6. On December 11,

12   2019, Defendant's counsel responded by email that the First Dataset reflected "purchase history

13   from IP addresses associated with Washington," but that transactions from a certain time period

14   might be missing from the First Dataset. *Id.* ¶ 7. But after a telephonic meet and confer in which

15   Plaintiff's counsel identified other concerns regarding the First Dataset, Defendant's counsel

16   stated by email on December 12, 2019, that the First Dataset in fact reflected "more than just

17   purchases from Washington IP addresses." *Id.* ¶ 8.

18        Defendant's counsel then produced a new dataset ("Second Dataset"), which it represented

19   contained "the results of the query of Washington IP address purchases" but would be missing

20   eleven months of transactions. *Id.* ¶ 9. Concerned both with the missing transactions in the

21   Second Dataset and with stark inconsistencies as between the two datasets, Plaintiff's counsel

22   followed up via both email and telephonic meet and confer over the next several weeks in an

23   attempt to interpret the First and Second Datasets (and, more specifically, in an attempt to

24   understand how either could actually reflect what High 5 claimed they reflected). *Id.* ¶ 10.

25   Notwithstanding these efforts, High 5's counsel refused—and continues to refuse—to explain the

26   inconsistencies identified by Plaintiff's counsel. *Id.* ¶ 11.

27

28

1    Against this backdrop, the Court should permit Plaintiff to pursue third-party discovery of

2    nationwide High 5 purchase history information. The sought-after information is squarely

3    relevant to the claims and defenses alleged this case: Plaintiff anticipates learning through this

4    third-party discovery that Washington players make up a disproportionate per-capita share of

5    High 5's "whales," which is a fact relevant both to Plaintiff's claims that High 5 has violated the

6    CPA by targeting Washington and to High 5's defense that the Court may not exercise personal

7    jurisdiction over it. Moreover, at this juncture, the only way for Plaintiff to assess the

8    completeness and accuracy of the First and Second Datasets High 5 has produced—and,

9    consequently, the only way for Plaintiff to conduct adequately-informed upcoming depositions

10   of High 5 witnesses—is for Plaintiff to be able to compare those datasets to a complete,

11   unassailable, nationwide database of High 5 transactions.

12       To the extent High 5 attempts on reply to raise burden or proportionality arguments, the

13   arguments should be stricken as waived. In any event, High 5 has no credible claim of burden

14   here because the third-party discovery Plaintiff seeks does not threaten to burden High 5. Apple

15   and Google are of course entitled to raise their own objections in due course, and Plaintiff's

16   counsel have no doubt that enforcement proceedings in the Northern District of California will

17   be vigorously contested. But that underscores the point: because Plaintiff seeks relevant

18   information from third parties, High 5 has no legitimate dog in this fight. And for that reason,

19   High 5 cannot meets its burden of "good cause," supported by a "particular and specific

20   demonstration," so as to justify the entry of a protective order. *Silcox*, 2018 WL 1532779, at *3

21   (W.D. Wash. Mar. 29, 2018).

**CONCLUSION**

23       Save for Plaintiff's concessions, the Motion should be denied.

1

2    Dated: February 10, 2020

3                                          Respectfully submitted,

4                                          **SEAN WILSON**, individually and on
                                           behalf of all others similarly situated,

5

6                                          By:  /s/ Todd Logan
                                           EDELSON PC
7                                          Rafey Balabanian*
                                           *rbalabanian@edelson.com*
8                                          Todd Logan*
                                           *tlogan@edelson.com*
9                                          Brandt Silver-Korn*
                                           *bsilverkorn@edelson.com*
10                                         123 Townsend Street, Suite 100
                                           San Francisco, California 94107
11                                         Tel: 415.212.9300 | Fax: 415.373.9435

12

13                                         By:  /s/ Cecily C. Shiel
                                           TOUSLEY BRAIN STEPHENS PLLC
14                                         Cecily C. Shiel, WSBA #50061
                                           cshiel@tousley.com
15                                         1700 Seventh Avenue, Suite 2200
                                           Seattle, Washington 98101-4416
16                                         Tel: 206.682.5600

17

18                                         *Admitted pro hac vice*

19
                                           *Attorneys for Plaintiff and the Proposed*
20                                         *Class*

21

22

23

24

25

26

27

28

# Exhibit 8

1

Honorable Ronald B. Leighton

2

3

4

5

6

7
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

8

9
SEAN WILSON, individually and on behalf of all other similarly situated,

NO. 3:18-cv-05275-RBL

10
Plaintiff,

**HIGH 5 GAMES, LLC'S REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER RE PLAINTIFF'S SUBPOENAS TO APPLE INC. AND GOOGLE LLC**

11
v.

12
PTT, LLC, a Delaware limited liability company d/b/a HIGH 5 GAMES, LLC, a Delaware limited liability company,

13
**NOTE ON MOTION CALENDAR: February 14, 2020**

Defendant.

14

15

16

17

18

19

20

21

22

23

24

25

26
HIGH 5 GAMES, LLC'S REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER RE PLAINTIFF'S SUBPOENAS TO APPLE INC. AND GOOGLE LLC
(3:18-CV-05275-RBL)

HOLLAND & HART LLP
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................ 1

II. ARGUMENT ............................................................................................................ 2

    A.  Apple and Google Should Not Provide Information Related To High 5 Vegas.. 2

        1.  Plaintiff Never Alleged A Claim Arising From High 5 Vegas. ...................... 2

        2.  Additionally And Independently, Plaintiff Lacks Standing To Pursue Claims
            Arising From High 5 Vegas. ............................................................................ 3

    B.  Apple and Google Should Not Provide Purchase Data Outside the State of
        Washington. ...................................................................................................... 5

III.    CONCLUSION ................................................................................................ 6

HIGH 5 GAMES, LLC'S REPLY IN
SUPPORT OF MOTION FOR
PROTECTIVE ORDER RE PLAINTIFF'S
SUBPOENAS TO APPLE INC. AND
GOOGLE LLC - i
(3:18-CV-05275-RBL)

HOLLAND & HART LLP
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

1

## TABLE OF AUTHORITIES

2

3

**Page(s)**

### CASES

4

*Cabell v. Zorro Prods., Inc.,*
   294 F.R.D. 604 (W.D. Wash. 2013) ............................................................... 4, 5

5

6

*Davidson v. Kimberly-Clark Corp.,*
   889 F.3d 956 (9th Cir. 2018), and (2) ........................................................... 3, 4

7

*King Cnty., Wash. v. Merrill Lynch & Co., Inc.,*
   No. 2:10-cv-01156-RSM, 2012 WL 2389998 (W.D. Wash. June 25, 2012) ...................... 4

8

9

*Mora-Villalpando v. U.S. Immigration & Customs Enforcement,*
   2018 WL 353674 (W.D. Wash. July 23, 2018) ................................................... 4

10

11

*S.R.I. v. Full Speed Ahead, Inc.,*
   No. C08-1372 RSM, 2010 WL 11527270 (W.D. Wash. Jan. 4, 2010) ............................. 5

12

*T-Mobile USA, Inc. v. Huawei Device USA, Inc.,*
   No. C14-01351 RAJ, 2016 WL 1597102 (W.D. Wash. Apr. 20, 2016) ............................ 3

13

14

*Tri-Star Elecs. Int'l, Inc. v. Preci-Dip Durtal SA,*
   No. CV 08-04226 GAF, 2012 WL 12964849 (C.D. Cal. Mar. 27, 2012) ......................... 3

15

*Wilson v. Frito-Lay N. Am. Inc.,*
   961 F. Supp. 2d 1134 (N.D. Cal. 2013) ........................................................ 2

16

17

### OTHER AUTHORITIES

18

Fed. R. Civ. P. 26 ........................................................................... 3, 4

19

Rule 12(f) ....................................................................................... 4

20

Rule 30(b)(6) ................................................................................ 2, 6

21

22

23

24

25

26

HIGH 5 GAMES, LLC'S REPLY IN
SUPPORT OF MOTION FOR
PROTECTIVE ORDER RE PLAINTIFF'S
SUBPOENAS TO APPLE INC. AND
GOOGLE LLC - ii
(3:18-CV-05275-RBL)

**HOLLAND & HART LLP**
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

1   Defendant High 5 Games, LLC ("High 5"), by and through its undersigned counsel of

2   record, hereby submits this Reply in Support of its Motion for Protective Order Re Plaintiff's

3   Subpoenas to Apple Inc. and Google LLC.

4   **I.   INTRODUCTION**

5   Third parties Apple and Google should not produce information outside the scope of

6   proper discovery, as Plaintiff attempts to achieve.

7   As a threshold matter, Plaintiff immediately folded on the discovery of information

8   outside the longest possible statutes of limitation, although he refused to do so in meet and

9   confer discussions.  Such late withdrawals of overbroad discovery requests does not

10  demonstrate reasonableness or the desire to make the litigation process more efficient.  This

11  conduct shows the opposite; Plaintiff would force High 5 to needlessly brief an issue, even

12  after extensively meeting and conferring on the issue.

13  High 5's motion should be granted.  Information related to High 5 Vegas is not at

14  issue in the lawsuit, there is no claim pleaded with respect to it, and Plaintiff lacks standing to

15  pursue any claims arising from High 5 Vegas.  Plaintiff offers no good reason why he has any

16  entitlement to discovery related to High 5 Vegas.  He obfuscates the issues, conflating his

17  failure to allege a claim arising from High 5 Vegas with issues of standing.  Plaintiff makes

18  no attempt to distinguish the cases on standing that High 5 cited, except to assert that an

19  irrelevant Ninth Circuit case somehow "forecloses" them.  And Plaintiff does not, and cannot,

20  offer any evidence how High 5 Vegas is in any way like High 5 Casino.

21  And information about purchases outside the State of Washington are clearly a fishing

22  expedition, in which Plaintiff cannot be permitted to engage.

23

24

25

26

HIGH 5 GAMES, LLC'S REPLY IN
SUPPORT OF MOTION FOR
PROTECTIVE ORDER RE PLAINTIFF'S
SUBPOENAS TO APPLE INC. AND
GOOGLE LLC - 1
(3:18-CV-05275-RBL)

**HOLLAND & HART LLP**
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

## II.     ARGUMENT

### A.     Apple and Google Should Not Provide Information Related To High 5 Vegas.

#### 1.     Plaintiff Never Alleged A Claim Arising From High 5 Vegas.

In his opposition, Plaintiff ignores one of the independent reasons why he cannot

pursue information relating to High 5 Vegas from Apple and Google: he never alleged a claim

arising from it.  Plaintiff argues only that High 5 Vegas is mentioned in one paragraph of the

Complaint, something High 5 had already noted in its opening brief.  ECF No. 86 at 5; ECF

No. 80 at 11.  It does not matter that the words "High 5 Vegas" appear once in the Complaint.

Courts hold that is not enough to allege a claim.  *See, e.g.*, *Wilson v. Frito-Lay N. Am. Inc.*,

961 F. Supp. 2d 1134, 1141-42 (N.D. Cal. 2013).  In *Frito-Lay*, the court held named

plaintiffs had failed to allege a claim for certain products they had not purchased because they

only listed such products without supporting facts.  *See id.* ("Plaintiffs' SAC's allegations

about the Non-Purchased Products are not detailed or plausible enough to survive a motion to

dismiss.").

Plaintiff Wilson has done even less, providing no notice of claims arising from High 5

Vegas.  In *Frito-Lay*, the named plaintiffs stated in their Complaint that they were pursuing

claims on behalf of absent class members, arising from the products they listed.  *Id.*  Here,

Plaintiff did not even assert the putative class would pursue such claims.

And Plaintiff's discovery conduct reinforced that he was not pursuing claims

regarding High 5 Vegas until over a year and a half after he had filed this lawsuit.  The first

discovery Plaintiff served seeking information on High 5 Vegas was the Rule 30(b)(6)

deposition notice that Plaintiff served on November 27, 2019, which Plaintiff vacated

following the Court's order on December 6, 2019 (ECF No. 75), then amended and served on

January 17, 2020.

HIGH 5 GAMES, LLC'S REPLY IN
SUPPORT OF MOTION FOR
PROTECTIVE ORDER RE PLAINTIFF'S
SUBPOENAS TO APPLE INC. AND
GOOGLE LLC - 2
(3:18-CV-05275-RBL)

**HOLLAND & HART LLP**
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

1      Because Plaintiff admits he has not played High 5 Vegas and has not alleged a claim

2  arising from High 5 Vegas in the allegations of the Complaint, he may not discover

3  information related to such unpleaded claims.  Fed. R. Civ. P. 26 advisory committee note to

4  2000 amendment; *see also Tri-Star Elecs. Int'l, Inc. v. Preci-Dip Durtal SA*, No. CV 08-

5  04226 GAF (AJWx), 2012 WL 12964849, at \*3-4 (C.D. Cal. Mar. 27, 2012); *T-Mobile USA,*

6  *Inc. v. Huawei Device USA, Inc.*, No. C14-01351 RAJ, 2016 WL 1597102, at \*2 (W.D. Wash.

7  Apr. 20, 2016).  Plaintiff's opposition confirms that discovery to substantiate unpleaded

8  claims is his sole purpose in seeking the information.  High 5's motion for protective order

9  should be granted.

10        **2.**       **Additionally And Independently, Plaintiff Lacks Standing To**
11                   **Pursue Claims Arising From High 5 Vegas.**

12      As an independent basis to bar production of High 5 Vegas information, Plaintiff lacks

13  standing to pursue putative class members' claims arising from High 5 Vegas.

14      Plaintiff offers no contrary evidence and therefore concedes High 5 Vegas is

15  materially different than High 5 Casino, as he must.  It is undeniable that the two social

16  gaming applications are not at all the same.  High 5 Vegas does not allow a player to run out

17  of free virtual coins.  Plaintiff's theory about High 5 somehow forcing players to purchase

18  virtual coins has no application in High 5 Vegas.

19      While admitting the factual circumstance, Plaintiff denies the inevitable conclusion by

20  (1) arguing that the case law High 5 cited about standing is "outdated" based on *Davidson v.*

21  *Kimberly-Clark Corp.*, 889 F.3d 956, 972 (9th Cir. 2018), and (2) citing the court's order on a

22  motion to strike in another case in which Sean Wilson is the plaintiff.  ECF No. 86 at 6.  Both

23  arguments fail.

24      Plaintiff does not attempt to distinguish any of the authorities High 5 cited on

25  standing, conceding that they apply unless *Davidson* forecloses them.  *See* ECF No. 7-8.

26

HIGH 5 GAMES, LLC'S REPLY IN
SUPPORT OF MOTION FOR
PROTECTIVE ORDER RE PLAINTIFF'S
SUBPOENAS TO APPLE INC. AND
GOOGLE LLC - 3
(3:18-cv-05275-RBL)

**HOLLAND & HART LLP**
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

1   *Davidson* has no application here.  Plaintiff simply lacks standing to assert claims arising

2   from High 5 Vegas.

3      *Davidson* has nothing to do with standing to assert claims for past harm from products

4   a plaintiff did not use, like Plaintiff is trying to do here.  The issue is never raised or discussed

5   in the court's opinion.  Instead, the Ninth Circuit analyzed whether a named plaintiff could

6   plausibly assert imminent future harm for prospective relief in a misleading labeling case

7   when she was aware, at the time she filed the complaint, that the labeling was misleading.

8   *See* 889 F.3d at 967-70.  The question was whether one could plausibly allege further, future

9   harm through deception if she was aware the labeling was misleading—an entirely different

10  issue than the one presented by High 5 Vegas.  *See id.*  Further illustrating the irrelevance of

11  *Davidson* to this case, the Ninth Circuit concluded the named plaintiff could allege she would

12  suffer future harm because she would not trust the labeling and would refrain from purchasing

13  the products.  *Id.* at 971-72.  The fact she would **not** purchase the products was her alleged

14  harm.  That is not the case here.

15     Plaintiff's argument based on the motion to strike in *Wilson v. Playtika* is also

16  inapposite.  An order striking allegations in a pleading is an extraordinary remedy, unlike a

17  routine discovery order setting boundaries on discovery, within the standards of Rule 26.  *See*

18  *Mora-Villalpando v. U.S. Immigration & Customs Enforcement*, 2018 WL 353674, at *3

19  (W.D. Wash. July 23, 2018) (referring to the Rule 12(f) motion to strike standard as a

20  "demanding standard" and a "stringent standard" that "leads district courts in the Ninth

21  Circuit to disfavor motions to strike" and rarely grant them); *King Cnty., Wash. v. Merrill*

22  *Lynch & Co., Inc.*, No. 2:10-cv-01156-RSM, 2012 WL 2389998, at *1 (W.D. Wash. June 25,

23  2012) ("Motions to strike are generally disfavored.").

24     In contrast to motions to strike, courts routinely limit onerous third-party discovery,

25  from which parties whose information is at issue, may move for protection.  *See, e.g.*, *Cabell*

26  *v. Zorro Prods., Inc.*, 294 F.R.D. 604, 607 (W.D. Wash. 2013) (granting party's motion for

HIGH 5 GAMES, LLC'S REPLY IN
SUPPORT OF MOTION FOR
PROTECTIVE ORDER RE PLAINTIFF'S
SUBPOENAS TO APPLE INC. AND
GOOGLE LLC - 4
(3:18-CV-05275-RBL)

HOLLAND & HART LLP
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

1  protective order related to overbroad subpoena seeking information on the party's sales and

2  business relationship with licensees); *S.R.I. v. Full Speed Ahead, Inc.*, No. C08-1372 RSM,

3  2010 WL 11527270, at *2 (W.D. Wash. Jan. 4, 2010) (granting defendant's motion for

4  protective order relating to overbroad document requests in subpoenas).  Here, High 5's

5  information about purchase history and its business relationship with users is the subject of

6  Plaintiff's overbroad subpoenas.  Like the courts in *Cabell* and *S.R.I.*, this Court should

7  likewise limit the scope of the subpoenas.

8       Plaintiff also argues that it is "unusual and improper" to raise a constitutional

9  deficiency for the first time in a motion regarding third-party discovery.  ECF No. 86 at 7.

10  Plaintiff cites no authority for this conjecture, which is wrong in the first instance because

11  High 5 raised the argument as soon as Plaintiff raised the issue of High 5 Vegas for the first

12  time, on November 27, 2019.  Declaration of Jennifer M. Jensen, Exs. 1-4.

13   **B.  Apple and Google Should Not Provide Purchase Data Outside the State of**
14        **Washington.**

15       Plaintiff conceded in party discovery that Plaintiff would not seek nationwide data.

16  Dkt. 74, ¶ 5; Dkt. 76.  The Subpoenas are an attempted end-run around this agreement, for

17  which Plaintiff has invented new reasons why he needs such information and disclosed those

18  reasons to High 5 for the first time in his response brief.

19       To be clear, Plaintiff's counsel has previously shared his alleged suspicions arising

20  from High 5 producing two data sets reflecting High 5's records of purchases.  But every step

21  of the way, High 5 has consistently (and repeatedly) explained that the two sets of purchase

22  data are from different queries.  Jensen Decl., ¶¶ 6-7.  The first was inadvertently run

23  overinclusively.  *Id.*  The second data set was run and produced immediately after this was

24  discovered.  *Id.*  The differences between the two queries are technical and complex, best

25  addressed by an analytics professional who is familiar with the processes.  *Id.*  High 5 has

26  never objected to offering a witness to testify about the analytics queries that produced the

HIGH 5 GAMES, LLC'S REPLY IN
SUPPORT OF MOTION FOR
PROTECTIVE ORDER RE PLAINTIFF'S
SUBPOENAS TO APPLE INC. AND
GOOGLE LLC - 5
(3:18-CV-05275-RBL)

HOLLAND & HART LLP
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

1   two datasets, which is a complex and technical subject. *Id.*, ¶ 8. High 5's Rule 30(b)(6)

2   deposition is set for Wednesday February 19, 2020. *Id.*

3        Plaintiff has never before protested that he needs nationwide data for the deposition.

4   *Id.*, ¶ 9. Indeed, he conceded nationwide data was not an issue to pursue in party discovery

5   before either purchase data set was produced. Dkt. 74, ¶ 5; Dkt. 76. All this posturing shows

6   that Plaintiff's counsel wants nationwide information in order to search for other plaintiffs or

7   witnesses and substantiate unpleaded claims in other jurisdictions. The Court should not

8   permit such abuse of discovery processes.

9   **III.**    **CONCLUSION**

10        For the foregoing reasons, High 5 respectfully requests this Court grant High 5's

11   motion for protective order.

12        DATED this 14th day of February, 2020.

13

14                  *s/ Christopher A. Wright*
                  Christopher A. Wright, WSBA #26601

15                  Emilia J. Sweeney, WSBA #23371
                  Attorneys for Defendant

16                  CARNEY BADLEY SPELLMAN, P.S.
                  701 Fifth Avenue, Suite 3600

17                  Seattle, WA 98104
                  Tel: (206) 622-8020 / Fax: (206) 467-8215

18                  E-mail:  wright@carneylaw.com
                            sweeney@carneylaw.com

19

20

21

22

23

24

25

26

HIGH 5 GAMES, LLC'S REPLY IN
SUPPORT OF MOTION FOR
PROTECTIVE ORDER RE PLAINTIFF'S
SUBPOENAS TO APPLE INC. AND
GOOGLE LLC - 6
(3:18-CV-05275-RBL)

Case 3:18-cv-05275-RBL   Document 63   Filed 02/14/20   Page 10 of 11

1

2          _s/ Erik F. Stidham_
           Erik F. Stidham (Admitted *Pro Hac Vice*)
3          Jennifer M. Jensen *(*Admitted *Pro Hac Vice*)
           Teague I. Donahey (Admitted *Pro Hac Vice*)
4          Holland & Hart LLP
           800 W. Main Street, Suite 1750
5          Boise, ID 83702
           Tel: (208) 342-5000 / Fax: (208) 343-8869
6          E-mail: efstidham@hollandhart.com
                    jmjensen@hollandhart.com
7                   tidonahey@hollandhart.com

8          Robert C. Ryan (*Admitted Pro Hac Vice*)
           Holland & Hart LLP
9          5441 Kietzke Lane
           Reno, NV 89511
10         Tel: (775) 327-3000 / Fax: (775) 786-6179
           E-mail:  rcryan@hollandhart.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

HIGH 5 GAMES, LLC'S REPLY IN
SUPPORT OF MOTION FOR
PROTECTIVE ORDER RE PLAINTIFF'S
SUBPOENAS TO APPLE INC. AND
GOOGLE LLC - 7
(3:18-CV-05275-RBL)

**HOLLAND & HART LLP**
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of February, 2020, I electronically filed the foregoing **HIGH 5 GAMES, LLC'S REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER RE PLAINTIFF'S SUBPOENAS TO APPLE INC. AND GOOGLE LLC** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Attorneys for Plaintiff**
Cecily C. Shiel
TOUSLEY BRAIN STEPHENS PLLC
1700 7th Ave Ste 2200
Seattle WA  98101-4416
Tel: (206) 682-5600
cshiel@tousley.com

**Attorneys for Plaintiff**
Benjamin H. Richman
EDELSON PC
350 North LaSalle St 14th Fl
Chicago IL  60654
Tel: (312) 589-6370
brichman@edelson.com

**Attorneys for Plaintiff**
Todd Logan
Rafey S. Balabanian
Eve-Lynn Rapp
Brandt Silver-Korn
EDELSON PC
123 Townsend St Ste 100
San Francisco CA  94107
Tel: (415) 638-9660
tlogan@edelson.com
rbalabanian@edelson.com
erapp@edelson.com
bsilverkorn@edelson.com

/s/ Stacy Gust
Stacy Gust, Legal Assistant

14188380_v1

HIGH 5 GAMES, LLC'S REPLY IN
SUPPORT OF MOTION FOR
PROTECTIVE ORDER RE PLAINTIFF'S
SUBPOENAS TO APPLE INC. AND
GOOGLE LLC - 8
(3:18-CV-05275-RBL)

HOLLAND & HART LLP
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869